## JOSEPH HEWETT *vs.* CHARLES BUCK & *als.*

The master may bind the owners by his contracts in relation to the usual employment of the vessel in the carriage of goods, but has no power as such to purchase a cargo on their account.

If the owners of a vessel have permitted the master to purchase on their account, or have ratified such acts when known to them, and thus held him out as their agent authorized to purchase, they will be bound by his acts.

The usage of a particular place that the master of a vessel as such has power to purchase a cargo on account of the owners, without authority from them, is not valid, and cannot bind the owners.

The ships husband or managing owner may bind the other owners for the outfit, care and employment of the vessel, but he has no power to purchase a cargo on their credit, without authority from them.

Where a paper has been read in evidence to the jury without objection, it is no cause of complaint that they are permitted to receive it as testimony in the case.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

This was an action of assumpsit against *Charles Buck, Cornelius Kidder, Paul R. Barker, Freeman Weeks* and *Otis Small,*

for four hundred and twenty-five casks of lime.   The two first named defendants were copartners, doing business under the firm of *Buck & Kidder*, the third and fourth named defendants were copartners under the firm of *Barker & Weeks*, and with *Small* were joint owners of the sloop *Cæsar*.  *Buck & Kidder* were ships husband, or the owners managing for themselves and the other owners.   *Jeremiah Witham* at the time of purchasing the lime was, and for two years prior thereto, had been master of the sloop.   *Witham*, who was introduced as a witness and released by the plaintiff, testified, that by his agreement with the defendants, he was to man, victual and sail the vessel ; that the defendants retained the right to terminate the arrangement at their pleasure ; that while the arrangement continued, they had a right to direct in what business the vessel should be employed ; that for his compensation, he was to have $\frac{55}{100}$ of her earnings.   The vessel was employed in summers chiefly in freighting granite ; but had carried three loads of lime from *Thomaston* to *Boston*, within the time of *Witham's* command.   The last of said cargoes is the one now in question.   The master purchased this lime of the plaintiff at *Thomaston*, as and for a cargo for said sloop to be carried to *Boston* and there sold.   He represented to the plaintiff that he had authority to purchase it upon the credit and for the account of the defendants, and the plaintiff sold it upon their credit and account, relying upon them for payment.   There was testimony in the case, which if believed by the jury, did prove that the defendants had authorized the master to purchase the cargo on their credit ; and that *Buck & Kidder*, acting as ships husband, had authorized the master to make the purchase on the account of the defendants.   There was evidence also which tended to discredit that testimony, and from which the defendants' counsel argued that it ought not to be believed.

One witness called by the plaintiff, testified, that it was within the usual employment of such vessels at *Thomaston*, when no cargo could be obtained on freight, for the masters to purchase cargoes on the credit of the owners, and that he believed it to be in accordance with the general usage at *Thomaston* for the last twenty years, during which he was acquainted with the lime dealing business ; and that he had never known an instance of the sellers of

lime at *Thomaston* to require any other evidence of the master's authority to bind the owners for the price of the cargoes so purchased, than the fact that the vessel was employed in the lime-coasting business at *Thomaston.* The plaintiff refused to send the lime as freight.

The question presented for the consideration of the jury was, whether the master in this case had authority to purchase the lime on the credit of the defendants.

The plaintiff's counsel requested the Judge to instruct the jury,

1. That by law, the owners of a ship are generally liable on all contracts made by the master, even without their knowledge, relative to the usual employment of the ship; and for all his acts and undertakings with third persons, of which his character and situation afforded the presumption of authority, *even though he should contravene the orders received from the owners,* unless the party with whom he contracted, were acquainted with the orders by which his authority was restrained.

2. That if they find by the evidence in the case, that the defendants were at the time owners of sloop *Cæsar,* that *Witham* was master of their said vessel, and in his capacity as such, bought the lime of the plaintiff on the credit of the owners, representing himself to the plaintiff as having authority so to do; that the plaintiff parted with his lime in good faith upon their credit, and delivered the same on board their said sloop to the master as their agent; and that it was within the usual employment at *Thomaston* of vessels of the class and capacity of the *Cæsar,* for the master, when no cargo could be obtained on freight, to purchase lime on the credit of the owners of the vessel, in order to give her employment by transporting the same to *Boston* or elsewhere for market; then the master's purchase in this instance, was clearly an act of which his character and situation as master afforded presumption of authority ; and that the plaintiff has made out his case, and is entitled to their verdict in his favor, unless the defendants have succeeded in satisfying them, that they as general owners had relinquished to the master their right to the control, direction and management of the *Cæsar,* so as to constitute him the owner for the time being, clothed with their authority over the vessel, and subjecting him to their liabilities,

3. That to constitute the master owner of said sloop, so as to relieve the defendants and render him liable to the plaintiff for the lime, it is incumbent on the defendants to satisfy them not only that the master had taken the sloop on shares, that he was to victual and man her at his own expense, and was to have a portion of her net earnings as his compensation, but they must go still further, *and show that the master had the entire control and direction of the vessel, so that the general owners for the time being had no right to interfere with her management.*

4. That if in weighing the testimony, they should find that these defendants have exercised acts of continued ownership over the sloop and of authority over the master, requiring him to transport their own granite whenever and so long as they chose; sending him to *Thomaston* with lumber at their pleasure, and directing him what to do with the sloop, then the legal presumption arising from such facts will be, that the master had not had such entire control of the vessel as to constitute him owner for the time being, and the liability of the general owners has continued, and they are chargeable in this action.

5. That if they are satisfied, that the owners of the sloop *Cæsar* or a part of those owners, being the managing owners and ships husband, instructed *Witham,* when he left *Bangor,* to go to *Thomaston* and there to purchase cargoes on the credit of the owners, and that *Witham* thus instructed, did purchase the lime in question on the credit of the owners, then the defendants are liable without regard to the question whether the sloop was sailed on shares or not.

The Judge instructed the jury that the relation in which *Witham* stood to the defendants, as master of their vessel, did not of itself confer upon him the authority to purchase the lime on their credit; that the relation in which *Buck & Kidder* stood to the other owners of the vessel as ships husband, did not of itself confer upon them the power to authorize the master to purchase the lime on the credit of all the defendants; that the plaintiff could not recover unless the jury should be satisfied from the evidence that the purchase had been authorized by all the defendants; that if the other three defendants had authorized *Buck & Kidder* to cause the cargo to be purchased on the joint credit of all the owners and *Buck & Kidder* had authorized the master to make the purchase on the

credit of all the owners; or if all the owners had in any other way given the authority to the master to make the purchase, the plaintiff was entitled to a verdict; that the giving of such authority might be proved by acts or declarations of the defendants, from which the jury could infer that such authority had been previously given or subsequently ratified. The defendants' counsel in the course of the examination received from the witness, *Witham*, the release which the plaintiff had given to qualify him for a witness, and read it to the jury as evidence of a consideration paid to the plaintiff by *Witham*, the release containing an acknowledgment of a valuable consideration received. It was read without objection by plaintiff's counsel. When the jury was about to retire, the plaintiff's counsel objected to that release going with the papers to the jury. The Judge decided that it might be handed to the jury, it having been read without objection.

The jury returned a verdict for the defendants. To the directions, refusals and instructions of the Judge, the plaintiff excepted.

*H. C. Lowell* for the plaintiff.

1. Whenever the owners direct the employment of their vessel, and appoint the master, they thereby hold him forth to the public as a person worthy of trust and confidence, and he is thereupon regarded in law as their accredited servant and confidential agent; and as such he has an implied authority, while that relation continues, to bind his principals, the general owners, by his contracts made with third persons in relation to that employment. *Story's Abbott on Shipping*, 91, 92, 93 and *notes;* 3 *Kent*, 161, 163 and *notes; Reynolds v. Toppan*, 15 *Mass. R.* 370; *Long on Sales, (Rand's Ed.,)* 413.

2. It was material to a fair trial of the merits, that the jury should have been informed of the legal effect of the usage proved, not merely as corroborating the direct testimony, but being of itself a binding part of all contracts made in reference to it. The defendants by putting their vessel into the lime business, subjected themselves to the legal liabilities established by the usage of that trade at *Thomaston. Newhall* v. *Dunlap*, 14 *Maine R.* 183; *Emery* v. *Hersey*, 4 *Greenl.* 407; *Hathorn* v. *Curtis*, 8 *Greenl.* 356; 11 *Johns. R.* 107; *Williams* v. *Gilman*, 3 *Greenl.* 276; 9 *Wheat.* 581; 2 *Stark. Ev.* 258; *Loring* v. *Gurney*, 5 *Pick.*

15; 3 *Conn. R.* 9; 4 *Bing. N. S.* 134. While thus employed, the master had power to bind the owners not only with respect to the usual employment of the vessel, but also with respect to the means of employing her. 2 *Stark. Ev.* 22, note *M.*; 3 *Kent,* 163; *Abbott,* 91.

3. To constitute the master owner for the voyage, it is sufficient that he had the entire control and management of the vessel, so that the general owners could have no right for the time, to interfere with her employment. *Emery* v. *Hersey,* 4 *Greenl.* 407; *Abbott,* 22.

4. The fourth request for instruction should have been granted. 2 *Cowen,* 479; *Barney* v. *Norton,* 2 *Fairf.* 353; *Hathorn* v. *Stinson,* 1 *Fair.* 224; *Page* v. *Pattee,* 6 *Mass. R.* 459; *Howe's Pr.* 412.

5. *Buck & Kidder,* who were managing owners, for themselves and the others, had sufficient power to purchase the lime, or to direct it to be done. *Hathorn* v. *Curtis,* 8 *Greenl.* 356; *Collyer on Part.* 681; *Abbott,* 76, and *notes; Muldon* v. *Whitlock,* 1 *Cowen,* 290; *Wheat. Selw. N. P.* 82; *Leigh's N. P.* 97.

6. The release was improperly sent to the jury. It was introduced solely for the consideration of the Court. *Rich* v. *Penfield,* 1 *Wend.* 380; *Benson* v. *Fish,* 6 *Greenl.* 141; *Whitney* v. *Whitman,* 5 *Mass. R.* 405.

*J. S. Abbott,* for the defendants, contended, that the master of the vessel, as such, had no authority to purchase a cargo upon credit. 3 *Kent,* 163. *Buck & Kidder,* as managing owners, had not authority to bind the other owners to pay for a cargo for the vessel, taken up on credit. Joint owners of a vessel are not partners. *Harding* v. *Foxcroft,* 6 *Greenl.* 76. The instructions to the jury by the Judge, gave the plaintiff all the advantages to which he was entitled. Under them, the verdict shows that no authority was given by a part of the owners to purchase a cargo on credit either to the master or managing owners. *Thompson* v. *Snow,* 4 *Greenl.* 264. The usage set up was not proved. But a single person testifies of it, and he may be the only one who knew of it. If there was such usage, it was unknown to the defendants, and for that cause they are not bound by it. *Loring* v. *Gurney,* 5 *Pick.* 15. If proved, and brought to the knowledge

of the defendants, it is bad because it is against the general princi-
ples of law. *Homer* v. *Dorr,* 10 *Mass. R.* 26 ; *Bryant* v.
*Com. Ins. Co.* 6 *Pick.* 131 ; *Waters* v. *Lilly,* 4 *Pick.* 145.
The requests founded on the supposition that all the owners exer-
cised a control over the vessel while *Witham* was master, are irrel-
ative, for the verdict, under the instructions, shows that they did
not. Where a paper is read to the jury without objection, it is a
paper in evidence in the case, and should go to the jury. In this
case the paper was admissible in evidence, had objection been
made. It was a paper under the hand and seal of the plaintiff.

The opinion of the Court was by

SHEPLEY J. — The master may bind the owners by his contracts
relating to the usual employment of the vessel in the carriage of
goods, but has no power as such to purchase a cargo on their ac-
count. 4 *Greenl.* 264 ; 8 *Greenl.* 356 ; 14 *Maine R.* 183.

If the owners have permitted the master to purchase on their
account, or have ratified such acts, when they became known to
them, they would by such a course of dealing hold him out as their
agent authorized to purchase, and they would be bound by his acts.
But the shopkeepers in a village might as well undertake to set up
a usage to trust every man's servant to contract debts for his mas-
ter without authority, as the dealers in lime, or any other article in
a particular place, a usage to sell to masters of vessels without au-
thority from the owners and thereby bind them. The cases refer-
red to by the counsel for the plaintiff do not authorize the proof of
mercantile usage, or the course of business in a particular place, for
such a purpose.

The ships husband, or managing owner, may bind the owners for
the outfit, care and employment of the vessel, but he has no power
to purchase a cargo on the credit of the owners. *Bell* v. *Hum-
phries,* 2 *Stark. R.* 286.

The plaintiff was permitted to prove any authority given to the
master, or to the managing owners, either by the acts or declara-
tions of those to be charged by them ; and such testimony being
submitted to the jury, failed to satisfy them, that any authority,
other than such as the law imparted to the master or managing
owners, was given. It is not necessary to consider whether the

defendants were relieved from their liability as owners on the ground that the vessel was taken on shares by the master, as the case was not presented to the consideration of the jury in such a manner as to relieve them from liability for that cause.

When counsel has read and made use of a paper to the jury without objection, he cannot complain, that they are permitted to receive it as testimony in the case.

The instructions requested ought not therefore to have been given, and those, which were given, were correct.

*Exceptions overruled.*