THE WOODRUFF & BEACH IRON WORKS *vs.* DAVID S. STETSON AND OTHERS.

The master of a vessel, whether in a foreign or a home port, has a right to charge the owners with such expenses for repairs as their interests require that he should incur; unless the owners or their agent are either at the port or so near that communication can be had with them without injurious delay.

A master of a steam propeller, running regularly between New York and Boston, ordered in New York certain repairs of the engine, which had broken down on the trip from Boston, coming to $42. The vessel could not go to sea without the repairs, and it was necessary that they should be immediately made. A part of the owners lived in Philadelphia, a part in Hartford, Connecticut, and a part in Middlesex county, Connecticut. Held, that the master had authority to

order the repairs, and to bind the owners by his contract therefor, without consulting them

The plaintiffs were a joint stock corporation, of which *W* and *B* owned an equal amount and nearly the whole of the stock. *W* and *B* were also partners, and as such owned an interest in a vessel in which the plaintiffs had no interest. *W* was president of the corporation and *B* its treasurer, and they were together its managers. Certain of the part-owners of the vessel, among whom were *W & B*, having contracted to sell their interests, found it necessary in doing so to provide for certain debts that were a lien on the vessel, and at a meeting of these part-owners for the purpose, *W & B* agreed to pay the claim of the plaintiffs, as well as some other of the debts, some of the other part owners agreeing to pay certain other of the debts, and in a schedule of the debts in question *W & B* marked the debt due the plaintiffs as "paid." No further act was done by *W & B* in the way of payment, and there was no credit given or other balancing of the account on the books of the plaintiffs. The plaintiffs afterwards brought suit on the claim against all the then owners of the vessel. Held, that the law would not infer a payment of the debt from these facts.

Where the plaintiffs in the presence of the auditors admitted that a certain sum was to be credited to the defendants on the account upon which the suit was brought, and entered the credit on the bill of particulars filed in the case, it was held to be an admission which estopped them; and where the auditors neglected to allow the credit in making up the balance due the plaintiffs, it was held to be error.

ASSUMPSIT, for repairs made by the plaintiffs upon a vessel belonging to the defendants. The case was referred to auditors, whose report embraced the following facts:—

The defendants, from the 1st day of January, 1857, to the 29th of August, 1857, were the owners of a steam propeller, called the "H. B. Beach," the defendants Stetson, Stroud, Loughead and Cushing being, during that time, partners under the name of D. S. Stetson & Co., and as such owning a three-eighths interest in the vessel, and the remaining interest being owned in unequal shares by the other defendants, Woodruff & Beach, Russell & Beach, Denison & Kelsey, John N. Sanders, George Spencer, and Daniel O. Emmons. John N. Sanders was, during all that time, by the agreement of all the defendants, the master of the vessel, and acted as such. The firm of D. S. Stetson & Co. was located, and the members of the firm all resided, in the city of Philadelphia; the firm of Woodruff & Beach was located at Hartford, in this state, as were also the plaintiffs, who were a joint stock corporation, of which Samuel Woodruff, of the firm of Woodruff & Beach,

was president, and Henry B. Beach of the same firm was treasurer. The other defendants resided at Chester, Essex, and Saybrook, in Middlesex county in this state.

About the middle of July, 1857, Sanders, as master of the vessel, applied to the plaintiffs, who were a joint stock corporation, carrying on the business of machinists and boiler makers in Hartford, to make certain repairs upon the steam engine of the vessel, which repairs were at once made by the plaintiffs, and were a part of the work and materials charged in the plaintiffs' bill of particulars, to wit: one lever, $9.80, and work and expenses fitting same, $32.53,—making in the whole $42.33. The repairs were necessary, the vessel being unable to run without them, and the sum of $42.33 was a reasonable charge for them. Sanders had no express authority to order the repairs, and no authority except that which the law would imply from his relation to the vessel and to the owners as master. The vessel was at that time, and had been for several months, running regularly between New York and Boston, and became disabled by the breaking of her machinery on her passage from Boston to New York. The vessel had been put upon this route in the spring of 1857, against the advice and wishes of D. S. Stetson & Co., by the other defendants as majority owners, and was now run upon that route against their declared wishes, and they were not consulted by the master, or by the other owners, or by the plaintiffs, as to the repairs in question ; nor did they, or any member of the firm, have any knowledge that the repairs were ordered, or that they were necessary, nor had they or any of them any knowledge that the repairs were made, until some time after they had sold out their interest in the vessel. The vessel was at New York when the repairs were ordered ; the order was given to Mr. Woodruff, who was president of the plaintiffs' corporation ; the lever was cast at Hartford, at the foundry of the plaintiffs, and was fitted and put into the vessel at New York by workmen of the plaintiffs sent from Hartford for the purpose. D. S. Stetson & Co. had been ship's husband for the vessel from the 1st of January, 1857 to about the 1st June, 1857, when the other owners took her out of

their hands as ship's husband, after which there were no other agents of the vessel except one McKee, at New York, and one Baker, at Boston, who had previously been acting as agents of the vessel at those ports respectively.

If, upon these facts, the court should be of opinion that Sanders had authority to order the repairs, then the auditors found that the defendants were liable for the same, and were justly indebted (unless for other facts to be stated,) to the plaintiffs, to the amount of $42.33, with interest from the first day of August, 1857; but if the court should be of opinion that he had no authority to order the repairs, they found that the defendants were not indebted.

It was claimed on the part of D. S. Stetson & Co. that, upon the facts proved before the auditors, the claim of the plaintiffs was, by the operation of law, paid and extinguished before the suit was instituted. Upon this point the auditors found the following facts:-

The plaintiffs, at the time the repairs were ordered, were, and have ever since remained, a joint stock corporation, the amount of their capital being $225,000, of which, at that time and during the time covered by the transaction to be stated, the defendant Woodruff owned $110,000, the defendant H. B. Beach $110,000 and one Thomas S. Root $5,000, the said Woodruff being, during all that time, president of the corporation, the said Beach treasurer, and the said Root secretary. There was no general agent or manager of the corporation, but its business was principally directed by the said Woodruff and Beach jointly, the said Root keeping the records and accounts of the company but having little to do with its active management. The said Woodruff and the said Beach had been partners in company under the name of Woodruff & Beach before the formation of the corporation, carrying on the same business that was afterwards and has been since carried on by the corporation, and since the formation of the corporation have not carried on the business as partners. The interest in the vessel was owned by them as partners, and stood in the partnership name, and the partnership was continued for all purposes outside of the manufacturing business done

by the corporation.  In August, 1857, all the part owners in
the vessel except D. S. Stetson & Co., owning five-eighths of
the vessel, were negotiating with one Cromwell for the sale
to him of the five-eighths interest owned by them, and a sale
of their interest was finally consummated on the 29th of Au-
gust.  In the negotiation for the sale the said Cromwell re-
quired and the vendors agreed, that all the debts of the vessel
which might constitute an incumbrance upon her should be
paid, or that he should be saved harmless from them.  There-
upon Woodruff, H. B. Beach, Russell, Sanders, and one Mc
Kee, then agent for the vessel in New York, met at New York
for the purpose of ascertaining and providing for all the claims
against the vessel, Russell acting for the firm of Russell &
Beach, of which he was a member, and under a power of at-
torney for the remaining part owners of the five-eighths inter-
est.  They ascertained the debts then due from the vessel, and
made a schedule of them which embraced the claim of the
plaintiffs.  Certain of the debts (not including the plaintiffs'
claim) were provided for by funds belonging to all the five-
eighths owners, placed in the hands of McKee for the payment
of the same, and the rest of the debts were divided between
Woodruff & Beach and Russell & Beach, each taking a list
and agreeing to pay or provide for the payment of the same.
The debt of the plaintiffs was included, in terms, in the list
of debts which Woodruff & Beach agreed to pay, and was
marked on a general schedule of the debts made by Woodruff
& Beach at the time, as "paid."  All the other debts on the
list taken by Woodruff & Beach were afterwards actually
paid by them, but no actual payment of this debt was made
to the plaintiffs, nor was there any action on the part of the
plaintiffs agreeing to accept the undertaking of Woodruff &
Beach as payment or satisfaction, nor was any entry made at
the time, or ever after, on the books of the plaintiffs, balan-
cing the account, or indicating its payment or discharge, or
its assumption by Woodruff & Beach, or its satisfaction in any
mode, but the account remained open upon the books of the
plaintiffs for many months thereafter, until it was finally car-
ried, for their own conveninnce, to the head of " doubtful ac-

counts" upon their ledger. The undertaking of Russell & Beach to pay certain of the debts, and that of Woodruff & Beach to pay the debts which they undertook to pay, was not intended by either of the parties as an equitable division between them of the indebtedness of the vessel, but merely as a convenient mode of providing for the immediate payment of the debts and the removal of the liens for the same on the vessel, which latter was the object particularly in view; and it was expected by all parties to the arrangement that a final settlement would be had among all the owners, in which the several parties would bring in their accounts for the money so paid. Woodruff & Beach, in undertaking to provide for the debts included in the schedule taken by them, were acting as partners, and as part owners of the vessel, and not as president and secretary or directors of the corporation, unless the law would regard them as affecting the corporation by their act, in the circumstances, without their expressly assuming to act in their official capacity. They neglected to take any further action toward paying the debt to the corporation, because their interests as a firm were so nearly identical with those of the corporation as to make the matter of but little importance.

Upon these facts the auditors found, if the court should regard the question as one of fact, that the debt had never been paid to the plaintiffs and was not satisfied and extinguished; if the question was one of law, or if the court should regard it as one of mixed law and fact in which the court could draw the inference required by the facts, they submitted the question wholly to the court, whether, upon the facts, the debt was to be regarded as satisfied and extinguished.

The auditors having presented their report to the court, the defendants Cushing and Loughead filed the following remonstrance:—

"The defendants Wm. F. Cushing and George P. Loughead, remonstrate against the acceptance of the report of the auditors in this case, because, on the trial of said case, the books of the plaintiffs being introduced in support of the

plaintiffs' claim, it appeared upon the examination of the account of the defendants thereon that they, the defendants, were credited upon said books two several items, one of $15.10 and the other of $10 ; whereupon the defendants claimed that they were entitled to the benefit of those credits; which was admitted by the plaintiffs; and by agreement and by direction of the parties, the credit was made upon the record, to wit, upon the bill of particulars, and upon the defendants' plea, and it was then agreed that that amount should be allowed to the defendants as a credit; there being no issue between the parties in relation thereto. But the auditors disallowed the same ; which the said defendants are ready to verify ; wherefore they pray that said report be not accepted."

The bill of particulars, on which the credit here referred to was entered, contained sundry other charges for repairs to the vessel, the whole amounting to $313.92 ; but the auditors had disallowed all the charges except the two stated (*ante*, p. 53) as amounting to $42.33.

Upon the hearing of the remonstrance before the superior court, (*Park J.*) the remonstrants offered evidence to prove the facts set up in the remonstrance, to which the plaintiffs objected, and the court excluded it; the remonstrants filing exceptions to the ruling. The court, having overruled the remonstrance, accepted the report of the auditors, and rendered judgment for the plaintiffs for the amount found to be due by the auditors. The defendants Loughead and Cushing filed a motion in error, and brought the record before this court for revision.

*F. Fellowes* and *F. Chamberlin*, for the plaintiffs in error.

1. The court erred in holding that Sanders, as master of the vessel, had authority to bind these defendants for the repairs which he ordered. It is expressly found that he had no authority except that which the law would imply from his relation to the owners as master of the vessel. The repairs were ordered in a *home port*. A master may, in a *foreign port*, get his vessel repaired, and borrow money on an hypothecation of the vessel. But this grows out of the necessity of

the case. There can be no necessity where the owners themselves are at hand to direct. The business of the master is merely to navigate the vessel. All his general powers are incidental to this. 3 Kent Com., 172, 175; 1 Parsons' Mar. Law, 90, 91, 380, 385; *Ship Fortitude,* 3 Sumner, 228; *Thomas* v. *Osborn,* 19 How., 30; *Beldon* v. *Campbell,* 6 Eng. Law & Eq., 473, 476; *Johns* v. *Simons,* 2 Ad. & El., *N. S.,* 425; *Stonehouse* v. *Gent,* id., 431; *Brodie* v. *Howard,* 17 Com. Bench, 109; *S. C.,* 33 Eng. Law & Eq., 146; *Jordan* v. *Young,* 37 Maine, 276; *Mitcheson* v. *Oliver,* 5 Ellis & Black., 419; *The Rhadamanthe,* 1 Dodson Adm. R., 201; *Arthur* v. *Barton,* 6 Mees. & Wels., 138, 142; *Merwin* v. *Shailer,* 16 Conn., 489. As to what is a home port. *The St. Jago de Cuba,* 9 Wheat., 409, 417; *The General Smith,* 4 id., 438. We contend that any port is a home port where the owners are conveniently accessible. The fact that Sanders was a part owner as well as master, did not add to his authority to order the repairs upon the responsibility of these defendants. Story on Part., §§ 414, 421, 427, 440; *Benson* v. *Thompson,* 27 Maine, 470; *Hardy* v. *Sproule,* 31 id., 71; *McLellan* v. *Reed,* 35 id., 172; *Swanton* v. *Reed,* id., 176.

2. The facts found by the auditors in reference to the arrangement for the payment of the claim of the plaintiffs by Woodruff & Beach amount to such a payment, extinguishment or novation of the debt, as should have prevented the plaintiffs from recovering. It is found that Woodruff & Beach agreed to *pay the debt;* also that they put it on a list and marked it " paid ; " also that Woodruff was at this time president, and Beach treasurer, of the plaintiffs' corporation, that they were directors and managers of its business, and owners of two hundred and twenty out of two hundred and twenty-five shares of its stock. In what they did they must be held to have acted equally for the corporation and the firm, and in behalf of the corporation to have accepted the firm as its debtors in the place of the owners of the vessel.

3. The court erred in overruling the remonstrance. The auditors neglected to give credit for the sum of $25.10 credited to the defendants on the books of the plaintiffs,

although the credit was fully admitted by the plaintiffs, and was with their consent entered upon the bill of particulars and thus made a part of the record. The defendants were therefore entitled to its allowance in their favor, and the auditors had no right to disallow it. *Smethurst* v. *Taylor*, 12 Mees. & Wels., 545. The claim that the auditors allowed it by applying it on the part of the plaintiffs' account which the auditors disallowed, is not tenable, since that fact does not appear, and it is expressly averred in our remonstrance that the auditors disallowed it, and the court refused to allow us to offer evidence in support of this averment.

*T. C. Perkins* and *McFarland*, for the defendants in error.

1. The master had authority to procure the repairs in question. They are found to have been necessary and that the vessel could not run without them. Contracts of the master, where they relate to the usual employment of the ship, are binding upon the owners. 3 Kent Com., 161. If any contract can be deemed to relate to the usual employment of the ship, it would seem to be that contract for such trifling but necessary repairs as those without which the ship could not be employed at all. 3 Kent Com., 163; *Provost* v. *Patchin*, 5 Seld., 235; *Webster* v. *Seekamp*, 4 B. & Ald., 353. The fact that the vessel was sent on a different route from that which these particular defendants, a minority in the ownerhip, desired, can make no difference. A majority in ownership have the right to control the employment of the vessel. 3 Kent Com., 151. The minority had a right to apply to a court of admiralty for protection against loss by a bond of the majority, but they did not so apply here, and therefore continued to share with the others the profits and losses resulting from the employment of the vessel. If the master's powers are affected by the fact that the vessel is in a home port, which we deny, so far as such repairs as those in question are concerned, then we say that the vessel was not at this time in a home port. *The Calisto,* Davies' R., 29. *Davis* v. *Child,* id., 71.

2. There was no payment, extinguishment or novation of

the debt. The Woodruff & Beach Iron Works were distinct from Woodruff & Beach, and could not be affected by any acts of the latter in their capacity as a firm, nor by any acts not done by them as officers of the corporation. It is found that they did not intend to act in that capacity and are not to be taken to have so acted unless the law would imply it from their relation to the corporation. It is very clear that the law makes no implication in the matter. The payment contemplated was a mere arrangement to remove the liens from the vessel, not to provide for the final settlement of the debts. The corporation has in fact never been paid and has never discharged the debt, and it is difficult to see how any thing but actual payment, where the corporation has done nothing to affect its rights, can extinguish the debt.

3. There was no error in the overruling of the remonstrance. The plaintiffs admitted a credit to the defendants of $25.10, and it was entered on the bill of particulars. But the bill of particulars embraced other items than those allowed, amounting in all to $313.92. The particular credit in question was applicable to that part of the bill which was disallowed, and the disallowance of these charges disposed of the credit, which related solely to them. If these facts do not appear fully upon the report, yet the court can see that it may have been so, and every presumption is to be made in favor of the judgment. The question before the auditors was wholly one of fact, and their finding can not be reviewed. *Colegrove* v. *Rockwell,* 24 Conn., 584; *Goodrich* v. *Stanley,* id., 613; *Ashmead* v. *Colby,* 26 id., 290.

DUTTON, J. As it appears by the report of the auditors in this case, that the articles for which this suit was brought went into and became part of a vessel, a part of which was afterwards sold by a portion of the defendants, who received the avails, and the residue was used by the other defendants for more than a year before this action was commenced, it is not easy to see why a promise to pay for them was not found as a fact, relieving the case from any question of law as to the right of the plaintiffs to recover. The non-assent of some of

the part owners of the vessel to the particular way in which she was employed, would not have affected the presumption.

But the record presents the question whether the master of the vessel, under the circumstances detailed in the report, ought in law to be regarded as the agent of the owners, in procuring the articles in question.

Whether a vessel is in a foreign or a home port, the master has a right to charge the owners with such expenses for repairs as the interests of the owners render it necessary that he should incur. There is a legal presumption in such cases that the owners will approve of the act of the master. *Webster* v. *Seekamp*, 4 Barn. & Ald., 353. *Johns* v. *Simons*, 2 Ad. & El. *N. S.*, 425. 3 Kent Com., 171, and notes. If the owner, or his agent for the purpose, is either at the port or at such a convenient distance that the master can have communication with him without such a delay as would materially prejudice his interests, the authority does not exist. 3 Kent Com., 171, 172.

We see no necessity for examining the subject further to find that the master had authority to order these articles. It was necessary that they should be procured immediately. The vessel could not leave port without them. A single day's delay would damage the owners more than the whole amount of the bill. Some of the owners lived in Philadelphia, some in Hartford, and some in Middlesex county, Connecticut. They were thirteen in number. None of them individually could order the repairs or authorize the master to do it. He would be obliged to communicate with and procure the assent of at least a majority in interest. Notwithstanding all the modern facilities by railroad and telegraph, this could not be done without much trouble and the loss of several days' time. To suppose that any of the owners would insist on such a course would be to impute to them a total disregard of their own interests. If it is urged that the owners had an agent in New York, where the repairs were made, the answer would be that it does not appear that he had any right to order repairs, and if he had, as the work was done under his own eyes, the presumption would be that he approved of it. It appears also that this

agent concurred with some of the other owners in allowing this bill of repairs as a charge against the vessel.

Another ground of error claimed is, that the auditors did not decide that this bill had been paid. They found that it had not been paid unless certain transactions detailed in the report amounted in law to payment. It appears that Woodruff & Beach, one of whom was president and the other treasurer of the corporation which brings this suit, agreed on a certain occasion, when they and some of the other part owners were negotiating a sale of their rights in the vessel, to assume this debt, for the purpose of providing that all the debts of the vessel which might constitute an incumbrance upon her should be paid, or that the vendee should be saved harmless from them. There were some other circumstances entitled to some weight on the question of payment as a matter of fact. But with them we have nothing to do. It is evident that there was nothing done which could in law amount to a payment. Woodruff & Beach and the Woodruff & Beach Iron Works were distinct parties. The plaintiffs were no party to the agreement between the part owners of the vessel. The object of the arrangement was merely to clear the vessel from an incumbrance, and so far it was probably effectual.

But there is one error in the record which is so manifest that it must have arisen from some mistake or misapprehension. We can not suppose that the auditors would knowingly have refused to allow to the defendants a credit, which it was agreed by the parties in their presence that they should have ; nor can we suppose that the court understandingly refused to hear the evidence of such an agreement, which was distinctly alleged in the remonstrance. Such an admission in the presence of the triers would constitute an estoppel, to disregard which would be manifest error. 1 Greenl. Ev., § 186.

The judgment therefore must be reversed unless the plaintiffs will remit the amount disallowed, to wit, $25.10, and retain the judgment for the balance.

In this opinion the other judges concurred.