(Decided 15th January, 1875.)

# John W. D. Pentz *vs.* James Clarke, and others, trading as James Clarke & Co.

*Repairs to a Vessel—Authority of Captain to pledge Owner's
Credit—Authority of Owner to pledge Credit of his Co-owner—
How the Owner of a Vessel may be made liable for repairs
done at the Home port, by order of the Captain.*

The captain of a vessel, as such, has no authority to pledge the credit of the
owner for necessary repairs made at the home port, where the owner
resides, and can be consulted, and can personally interfere.

And the fact that the captain is also a part owner of the vessel, gives him no
authority to pledge the credit of his co-owner for such repairs. In order to
bind the owner of a vessel for necessary repairs done at the home port where
he resides and can personally interfere, the master must have special autho-
rity for that purpose; or the owner must have held out the master as having
such authority; or he must have ratified the contract after it was made.

APPEAL from the Superior Court of Baltimore City.

The nature of the case is stated in the opinion of the Court. The Steamer Massachusetts was purchased in New York for $20,000, from A. J. Richardson by Samuel J. Pentz, and it was conveyed to him and his brother, the appellant, by bill of sale dated 7th of February, 1863, and recorded at the Baltimore Custom House on the 21st of March, 1865. On the 24th of June, 1867, Samuel J. Pentz and the appellant mortgaged said steamer to the Old Town Savings Institution of Baltimore to secure the sum of $20,000 loaned to Samuel. By bill of sale dated the 14th of May, 1868, and recorded the same day, Samuel J. Pentz conveyed his one-half interest in the steamer to Joseph White. Previous to this, White was authorized by Samuel J. Pentz to take charge of the steamer. The steamer was repaired during the year 1868, in the City of Baltimore, the home port and the residence of the appellant, by the plaintiffs at the instance and request of White who stated that he was master and part owner thereof, and that the appellant was the other part owner. White obtained no authority from the appellant to have the work done. The repairs were reasonable, and necessary for the running of the vessel, and were made upon the credit of the vessel and her owners, and were charged upon the books of the plaintiffs to "Steamer Massachusetts and owners." A part of the bill for repairs was paid by White. The appellant testified that he did not know that his name was on the register as part owner of the steamer, until some two or three years after the bill of sale from Richardson was recorded, she having been bought by Samuel J. Pentz, and that he never exercised any act of ownership over said vessel, except the execution of the mortgage aforesaid, which was executed by him at the instance and for the benefit of his brother Samuel, who got the entire amount of $20,000 loaned by the bank. That he never took possession of said steamer, nor appointed, nor joined

in the appointment of officers for her, nor run her or interfered with her running, nor received anything from her earnings. That Samuel J. Pentz asked his permission to let White take charge of the vessel as captain, but he refused; that his brother came a second time and said White could raise enough money to pay for necessary repairs and expenses, and that he (the appellant) would not be made responsible for a dollar; but he still refused; that he never passed a word with White about the vessel; the details for her management was arranged between White and his brother Samuel; that he was not a party to it; the vessel was entirely under the control of his brother Samuel and White, they having exclusive possession of her.

*Exception.* The plaintiffs offered the following prayers:

1. If the jury believe from the evidence that J. W. D. Pentz and Joseph White were joint owners of the steamer Massachusetts, and that said White was master of said vessel, and as such part owner and master, did order the plaintiffs to do the work and make the repairs charged for in the cause of action, and that such repairs and work were reasonably necessary for the outfit and proper management of said vessel, and were made by the plaintiffs, then their verdict must be for the plaintiffs, even though they find that said Pentz did not order said work and materials or expressly agree to become responsible for their payment.

2. If the jury believe from the evidence that J. W. D. Pentz, was part owner of the steamer Massachusetts, and that Joseph White was the master of said vessel, and as such, did order and contract with the plaintiffs to do the work and make the repairs on said vessel charged for in the cause of action, and that such repairs and work were reasonably necessary for the proper outfit and management of said vessel, and were made by the plaintiffs, then their verdict must be for the plaintiffs, even though they find that said Pentz did not order said work and

materials or expressly agree to become responsible for their payment.

And the defendant offered the following prayers :

1. That if the jury find from the evidence in the cause that the bill sued upon was contracted by the said Joseph White, without the knowledge, privity or consent of John W. D. Pentz, and without his authority, that at the time of so doing, the said White was the registered half-owner of said boat, then plaintiffs are not entitled to recover, unless the jury further find from the evidence in the cause, that said Pentz subsequently ratified the contracting of said debt by said White, and that there is no evidence in this cause from which the jury can find that said debt was contracted by the authority of said Pentz, and with his knowledge, privity or consent, or that said Pentz subsequently ratified the same.

2. That if the jury find from the evidence in the cause that the debt sued upon by the plaintiffs, was contracted by the said White, and at the time of contracting the same he was the master of said steamer, and that the debt so contracted by him, was contracted without authority of said Pentz, and without his knowledge, privity or consent, and was not subsequently ratified by said Pentz, then the plaintiffs are not entitled to recover, and that there is no evidence in this cause of such authority or subsequent ratification.

3. If the jury find the debt offered in evidence, and that it was contracted by Jos. White, and that he took possession of said steamer by authority of Saml. J. Pentz, and without any authority of John W. D. Pentz, and that the latter in no way directed or authorized said White, to act as his master of said vessel, and that said White, in contracting said debt, did not contract as John W. D. Pentz's master of said steamer, and on a contract with said Pentz, on orders given by the said White as for said Pentz, then the plaintiffs cannot recover, and that there is no evidence

in this cause that said White was the defendant's master, or that he contracted said debt as for said Pentz.

4. If the jury find the debt mentioned in plaintiffs' bill of particulars, and that it was contracted by Joseph White at the City of Baltimore, and that said vessel was registered at the Port of Baltimore, and that said Pentz resided in the City of Baltimore at the time covered by said bill of particulars, and that said Pentz in no wise ordered or directed said repairs, then the plaintiffs are not entitled to recover, unless Pentz ratified subsequently the acts of said White, and that there is no evidence of such ratification.

5. If the jury shall find from the evidence that John W. D. Pentz never took possession of the steamer Massachusetts, and never exercised acts of ownership over her, except as to the mortgage, and the explanation thereof given by him, and that said Pentz never run, or authorized the running of said steamer, or authorized White to repair said steamer, or appointed officers for her, then the plaintiffs are not entitled to recover, although the jury may find that White ordered said repairs for said steamer on behalf of the owners.

6. If the jury find that said steamer was taken possession of by said White, under authority from Samuel J. Pentz, and that said White, acted as captain, by authority of himself and said S. J. Pentz, and that said White contracted the debt mentioned in evidence, and that before White took charge of said boat, J. W. D. Pentz, refused to allow said vessel to be run under his authority, or so as to make him liable in any way whatever for account of said vessel, and refused to be responsible for one cent, on account of said vessel, then the plaintiffs cannot recover.

The Court, (DOBBIN, J.,) granted the plaintiffs' prayers and rejected those of the defendant. To this ruling of the Court the defendant excepted, and the verdict and judgment being for the plaintiffs, he appealed.

The cause was argued before MILLER, ALVEY, and ROB-
INSON, J., by agreement of counsel, and BARTOL, C. J.,
and STEWART, J., participated in its determination.

*William R. Reese* and *John Carson,* for the appellants.

White, in ordering the repairs, acted in his relation or
capacity as owner, and not as master. Being himself a
half owner, his acts must necessarily be referred to his
higher capacity as principal or owner, and not master.
But for one owner to bind his co-owner for repairs made
at the home port where his co-owner resides, there must be
express authority from such co-owner, or a holding out
amounting to such authority; no such authority results
from the relation of co-ownership *per se.* The question is
always one of agency, to be found by the jury. 1 *Par.
Mart. Law,* 87 ; *Brodie vs. Howard,* 84 *Eng. Com. Law,*
117 ; *Hackwood vs. Lyall,* 84 *Eng. Com. Law,* 124 ; *Myers
vs. Willis,* 86 *Eng. Com. Law,* 887 ; *Curling vs. Robertson,*
49 *Eng. Com. Law,* 338 ; *Mitcheson vs. Oliver,* 85 *Eng.
Com. Law,* 444 ; *McCready vs. Woodhull,* 34 *Barbour,* 80 ;
*Milburn vs. Guyther,* 8 *Gill,* 92 ; *Elder vs. Larrabee,* 45
*Maine,* 594 ; *Revens vs. Lewis,* 2 *Paine C. C. R.,* 202 ;
*Stedman vs. Feidler, Admr.,* 25 *Barb.,* 605 ; *Morgan vs.
Shinn,* 15 *Wallace,* 110 ; *Howard vs. Odell,* 1 *Allen,* 85.

There is no evidence in the case that John W. D. Pentz
ever gave White authority expressly to order these repairs,
or held White out as possessing such authority ; this dis-
poses of the whole case.

Both the plaintiffs' prayers are erroneous and calculated
to mislead the jury, because they base the plaintiffs' right
to recover, upon White's acts in his relation as master and
not as owner. And even if it be held that the plaintiffs'
first prayer submits to the jury the question of Pentz's
liability by reason of White's acts being done in the
capacity of part owner, it is erroneous and misled the jury,
because they were not further instructed to find that Pentz

had given express authority to White, or held him out as having such authority to bind him. As the prayer now stands, the jury were directed to find against Pentz, though they might believe that White was in nowise the agent of Pentz.

The plaintiffs' first prayer is further erroneous and calculated to mislead the jury, because it bases Pentz's liability upon White's relation as owner and master combined, which combination of relation to the vessel has no legal significance in fixing Pentz's liability, though the jury may from the form of this prayer have inferred otherwise.

But suppose White's acts are not to be referred exclusively to his relation as owner, but also as master, what then? Does it follow that by his mere relation as master, he was authorized to bind the general owners, irrespective of the questions how he was appointed, and by whom he was appointed, or the place where the repairs were done?

The plaintiffs' prayers, granted by the Court below, assert the proposition that because White was master, and ordered repairs, therefore Pentz as general owner was responsible for them. This doctrine of the liability of general owner for the acts of the master, from his mere relation to the vessel as master, was long since repudiated by this Court, and the law held otherwise. *Henderson vs. Mayhew,* 2 *Gill,* 393; *Stirling and Ahrens vs. Loud, &c.,* 33 *Md.,* 436; *Stirling, et al. vs. Navassa Phosphate Co.,* 35 *Md.,* 140.

Whatever may have been the law heretofore, the whole current of modern authority is to this point— *whose agent is the party ordering the repairs?* The whole question is one of agency, and the law is now so held by the highest tribunals of this country and Great Britain. *Myers vs. Willis,* 84 *Eng. Com. Law,* 103; *Same vs. Same,* 86 *Eng. Com. Law,* 887; *Mitcheson vs. Oliver,* 85 *Eng. Com. Law,* 444; *Bernard vs. Aaron,* 103 *Eng. Com. Law,* 889; *Hibbs vs. Ross,* 1 *Queen's Bench,* 534

(*Law Reports;*) *The Troubadour,* 1 *Ad. & Ec. Rep.*, 303 (*Law Reports;*) *The Great Eastern,* 2 *Ad. & Ec. Rep.*, 88 (*Law Reports;*) *Mackenzie vs. Pooley,* 34 *Eng. Law & Eq.*, 486; *Schooner Freeman vs. Buckingham,* 18 *Howard,* 182; *Thomas vs. Osborn,* 19 *Howard,* 22; *Morgan's Assignees vs. Shinn,* 15 *Wallace,* 110; *Howard vs. Odell,* 1 *Allen,* 85; *Blanchard vs. Fearing,* 4 *Allen,* 118; *Webb vs. Peirce,* 1 *Curtis,* 104; *Mayo vs. Snow,* 2 *Curtis,* 102; *Macy vs. Wheeler,* 30 *N. Y.*, 241; *Revins vs. Lewis,* 2 *Paine C. C. R.*, 202; *Stedman vs. Feidler,* 25 *Barbour,* 605; *The Phebe,* 1 *Ware,* 269.

In all cases where the owner is out of possession, and there is an intervening possession, or ownership *pro hac vice,* whether it be by formal charter or by verbal hiring, or by sailing on shares, or on a "lay," or by permission or consent, the master is the agent, not of the general owners, but of the ownership which is in possession, managing the vessels. *Reeve vs. Davis,* 28 *Eng. C. Law.*, 96; *Bernard vs. Aaron,* 103 *Eng. C. Law,* 889; *Fox vs. Holt,* 36 *Conn. R.*, 571; 4 *Benedict,* 297; *Tucker vs. Stimson,* 12 *Gray,* 487; *Baker vs. Huckins,* 5 *Gray,* 596; *Webb vs. Peirce,* 1 *Curtis,* 104; *Mayo vs. Snow,* 2 *Curtis,* 102; *Bonzey vs. Hopkins,* 55 *Maine,* 98.

The evidence in this cause shows that White was appointed master by Samuel J. Pentz. That he did not consult J. W. D. Pentz and obtain his consent. That J. W. D. Pentz was not in possession of the steamer; did not appoint her master; and had nothing to do with her running or earnings. White therefore, as master, was not J. W. D. Pentz's agent, and did not bind him.

But even if White was master, he is not the general agent of the owners. 1 *Parsons' Mar. Law,* 380.

As such master he is not authorized, without express authority from the owners, to bind them by ordering repairs at the home port, where the owners reside. 1 *Parsons' Mar. Law,* 380, 381, 382, 383, *note; Jordan vs.*

*Young*, 37 *Maine*, 276, 280 ; *Elder vs. Larrabee*, 45 *Maine*, 594 ; *Dyer vs. Snow*, 47 *Maine*, 257 ; *Woodruff vs. Stetson*, 31 *Conn.*, 61 ; *Fox vs. Holt*, 36 *Conn.*, 571 ; 4 *Benedict*, 296-7 ; *Gager vs. Babcock*, 48 *New York*, 154 ; *Mitcheson vs. Oliver*, 85 *Eng. C. L.*, 445 ; *The Great Eastern*, 2 *Adm. & Ec. Report*, 96, *Law Reports*, 1867, 1869 ; *Arthur vs. Barton*, 6 *Meeson & Welsby*, 136 ; *Taylor vs. Steamer Commonwealth, U. S. District Court, E. D. Missouri*, reported in vol. 20, No. 9 *Int. Rev. Record, August* 31*st*, 1874.

The plaintiffs' prayers are radically defective. Because they blend White's two capacities, as owner and master, together ; they ignore the question of agency, whether White acted as master or owner ; they ignore the fact that the repairs were made at the home port ; and they ignore the facts showing that Pentz was out of possession, and that White had exclusive possession of the vessel.

*Frederick T. Baker* and *John M. Carter*, for the appellees.

This is clearly not a case of ownership *pro hac vice*, even from the appellant's own testimony. To create this relation there must be a transfer or conveyance of some sort from the legal owner to the owner *pro hac vice*, and that arrangement, or the fact that it exists must be known to the material man to exempt the legal owner from responsibility for necessary repairs. *Saxton vs. Reed, Hill & Denio, N. Y. Sup. Ct. Rep.*, 328.

White's relation to the vessel was that of *managing* owner and master. The appellant, in his testimony, says he was very seldom on board of her, took no interest in her, and did not know she needed repairs.

The appellees' prayers were properly granted, whether White be considered as master, or master and managing owner. In either case, White was agent of the co-owner, and could bind him for necessary repairs to the vessel, even at the home port.

The first prayer asserts that the appellant having been shown to be co-owner of the vessel, White the other co-owner and master, the repairs to have been ordered by White *as such co-owner and master*, and to have been necessary for the running of the vessel, therefore the plaintiffs were entitled to recover, although no special authority from the appellant may have been shown.

A co-owner by ordering repairs and other necessaries for the employment of a ship, may render his co-owners liable, unless their liability be expressly provided against. *Abbott on Shipping, marg. pa.*, 105 ; *Shemerhorn vs. Loines*, 7 *Johnson*, 310 ; *Muldon vs. Whitlock*, 1 *Cowen*, 290 ; *King vs. Lowry*, 20 *Barbour*, 532 ; *Hardy vs. Sproule*, 29 *Maine*, 258.

The managing owner and master is agent for the co-owners in ordering necessary repairs. *Parsons' Maritime Law*, 97, 8–9 ; *Barker vs. Highley*, 109, *E. C. L. R.*, 27 ; *Whitwell vs. Perrin*, 93, *E. C. L. R.*, 412.

Especially is this the case in the absence of any known dissent, and this authority extends to the home port. *Story's Agency, sec.* 40 ; *Collyer on Partnership, sec.* 1226; *James vs. Bixby*, 11 *Mass.*, 34 ; *Dawson vs. Leake, Dowling & Ryland, N. P. C.*, 52 ; *Parsons on Shipping and Admiralty, sec.* 100.

The second prayer differs from the first in that it deals with White in his relation as master only. The owners of a vessel are liable for necessary repairs furnished upon the order of the master, unless it be shown that the master had no authority to order them, and that the parties furnishing had knowledge of the want of authority. *Story's Agency, sec.* 298 ; 3 *Kent's Com., marg. page*, 156 ; *Rich vs. Coe, Cowper*, 636 ; *Glendon vs. Tincler, Holt's N. P. C.*, 586; *Holcroft vs. Halbert*, 16 *Ind.*, 258 ; *McCready vs. Thorne*, 49 *Barbour*, 440 ; *Henshaw vs. Rollings*, 5 *Louisiana*, 335 ; *Glading vs. George*, 3 *Grant's Cases*, 290 ; *Winsor vs. Maddock*, 64 *Penna.*, 231.

The master, as such, is agent for the owners of a vessel, and has power to bind them for necessary repairs, unless his power has been in some way suspended or restricted, and that suspension or restriction brought home to the creditor. And this authority extends to the home port. *Conklin's Admiralty*, 73-4-5; *Abbott on Shipping, marg. page* 134; *Provost vs. Patchin*, 5 *Selden*, 235; *Holcroft vs. Halbert*, 16 *Ind.*, 258; *Musson vs. Fales*, 16 *Mass.*, 335.

ROBINSON, J., delivered the opinion of the Court.

This suit was brought against the appellant, part-owner of the steamer "Massachusetts," for work done and materials furnished by the appellees, in repairing said steamer, in the city of Baltimore, the home port, where the appellant resided.

The evidence shows the repairs were necessary, and that they were done upon the order of the captain, who was also at the time part-owner of the steamer, but without any authority from the appellant. The main question presented by the record is, whether the captain had the authority under such circumstances, to pledge the credit of the appellant for the repairs thus ordered? It is a question of importance to the commercial interests, and it is to be regretted, that the decisions in this country are so conflicting. Without examining at length, the many cases in which this question has been considered, it is sufficient to say, that in some States it has been held, that the relation of master and owner, *per se*, confers upon the former, authority to bind the latter for necessary repairs, either in a *foreign port*, or in the *home port* where the owner resides. *Glading vs. George*, 3 *Grant's Cases*, 290; *Winsor vs. Maddock*, 64 *Penn.*, 231; *McCready vs. Thorne*, 49 *Barbour*, 438; *Provost vs. Patchin*, 5 *Selden*, 235.

In other States this authority has been limited to a foreign port, or to the home port where the owner did not reside, and was not within easy access of the master.

*Jordan vs. Young,* 37 *Maine,* 276; *Elder vs. Larrabee,* 45 *Maine,* 594; *Woodruff vs. Stetson,* 31 *Conn.,* 61; *Fox vs. Holt,* 36 *Conn.,* 571; *Taylor vs. Steamer Commonwealth, U. S. District, Missouri, Int. Rev. Rec., Aug.* 31, 1874; *Parsons' Mar. Law,* 380–383, *note.*

In England, whatever may have been the rule laid down by the earlier cases, all the later decisions hold, that no such authority arises from the relation of master and owner, *per se;* and that in order to bind the owner for necessary repairs done at the home port, the master must have *special authority* for that purpose; or the owner must have held out the master as having such authority; or he must have ratified the contract after it was made.

In *Arthur vs. Barton,* 6 *Mees. & Wels.,* 142, Lord ABIN-GER, C. B., said:

"Under the general authority which the master of a ship has, he may make contracts, and do all things necessary for the due and proper prosecution of the voyage in which the ship is engaged. But this authority does not usually extend to cases where the owner can himself personally interfere, as in the home port, or in a port in which he has beforehand appointed an agent, who can personally interfere to do the thing required. Therefore, if the owner, or his general agent, be at the port, or so near to it as to be reasonably expected to interfere personally, the master cannot, unless specially authorized, or unless there be some usual custom of trade warranting it, pledge the owner's credit at all, but must leave it to him, or to his agent, to do what is necessary."

The rule thus laid down was fully approved and sanctioned by the Court of Common Pleas, in *Gunn vs. Roberts,* 9 *Com. Pleas,* 331, (*Law Rep.,*) in which it was held, that the master had no authority to bind the owner for necessary repairs, either at the home port where he resided, or at a foreign port at which the owner had an agent appointed for that purpose. In that case, as in this, it was contended

that the captain was the general agent of the owner, but, BRETT, J., said, "That proposition cannot be supported in the fullest sense of the terms in which it was stated. The captain has authority to bind the owners to pay for supplies, or repay money advanced, only when the necessity of the case gives him that authority. In order to give rise to that authority, it has for many years been recognized that two things are necessary; first, it must appear that the money borrowed or goods supplied, were necessary for the use of the ship ; secondly, it must be shown, also that it was *reasonably* necessary that the captain should obtain or order them on the owner's credit. If the captain be in a foreign port, and the owner is not there, and there is no agent of his there, and the captain has not himself been put in funds by the owner, then it may be reasonably necessary that he should order supplies on the owner's credit for the necessary purposes of the ship, but if he is in port in the owner's country, and the owner is there with means to pay for goods, or credit to order them for himself, the owner is the master of affairs, and there is no necessity for the captain to order them, or to pledge the owner's credit, and so there is no necessity for the captain's making a contract to bind the owner."

"The leading case on the subject is *Arthur vs. Barton*, and the opinion there expressed by Lord ABINGER, as a summary of all the previous authorities, has always been held as a correct expression of the law."

The Justice further says : "McLachlan, in his work on Merchant Shipping, 131, correctly states the law as follows :

" As appears from those early cases, but especially the last, there are well defined limits to the exercise of this authority on the part of the master. *First*, in cases where the owner or his agent is at the port of the ship's anchorage, or so near to it as to be reasonably expected to interfere personally, the master cannot, without *special au-*

*thority* for the purpose, pledge the owner's credit for the ship's necessities."

We have quoted at length from the opinion of the Court in this case, because it is the latest decision in England, and states correctly, we think, the law on the subject. After all, this question as to the authority of the captain to pledge the credit of the owner for necessary repairs and supplies, rests upon and must be determined by the general principles which govern the law of agency. To a certain extent at least, the captain is and must be treated necessarily as the agent of the owner, and as such, clothed with authority to do whatever may be considered fairly to be within the scope of his appointment. He must of course have the power to do whatever may be *necessary* to enable him to prosecute the voyage. If he should be in a foreign port and repairs are necessary to be done, and the owner is not there, and has no agent there authorized to act for him, the captain must, from the necessity of his position, be considered as having the authority to order such repairs to be done. But in the home port, where the owner resides, where he can be consulted and where he can personally interfere, no such necessity exists, and there is no reason why the captain should pledge his credit even for necessary repairs, without special authority for that purpose.

If then, the captain, as such, had no authority in this case to pledge the credit of the appellant for the work done and materials furnished, does the fact that he was *part-owner* at the time, confer upon him any greater authority? This question as well as the question in regard to the power of the captain, depends upon the fact as to whether he was authorized by his co-owner to pledge the credit of the latter. In other words, it depends upon the question of agency. In *Brodie vs. Howard,* 84 *Eng. Com. Law,* 109, JERVIS, C. J., says:

"I think it is now perfectly well understood that these and all similar cases depend upon the question, with

whom was the contract made; and that again depends upon the question of principal and agent,—was the party who gave the order for the repairs the agent of the party sought to be charged? Before we consider that, it may be as well to understand what is the position of 'part-owners' of a vessel. They may be partners generally, or partners in a particular adventure; but that they are not necessarily partners is clearly determined by the case of *Helme vs. Smith,* 7 *Bing.,* 709. A part owner, therefore, has not a general authority to bind his co-owners."

WILLIAMS, J.—"I am of the same opinion. It is well established that part-owners of a ship are not in the position of ordinary partners."

But although the mere relation of co-owners does not confer this authority, yet it may be implied from the acts and conduct of the parties. As for instance, where the co-owner upon whose order the materials have been furnished and the work done, has been held out by the other co-owner as having such authority, or where by previous dealings, such authority has been recognized.

From what we have said, it follows, that the Court erred in granting the plaintiffs' prayers. We find no error in the refusal to grant the defendant's prayers. Although the captain in this case had no express authority from the appellant to order these repairs, yet if the latter subsequently ratified the contract thus made, the plaintiffs were entitled to recover. As the case will be remanded for a new trial, we do not propose to comment upon the evidence tending to prove such ratification on the part of the appellant. It is sufficient to say there was evidence on this subject, which ought to have been submitted to the jury.

The proposition of law embraced in the third prayer may be correct in itself, but has no application to the facts in this case. The question here is not whether White was the captain of the appellant, a registered part-owner, or the captain of an owner *pro hac vice,* or the captain of a

charter party, and this prayer which is based upon the decision in *Mitcheson vs. Oliver*, 85 *Eng. Com. Law*, 419, has no application here.

The fourth, fifth and sixth prayers were also properly refused. The defendant was the *registered* owner of one-half of this steamer, and by his solemn deed of mortgage executed more than two years after the registration, he again declared himself as part-owner. So far then as these plaintiffs are concerned he must be considered as part-owner, regardless of any private understanding between himself and his brother to the contrary. Having thus held himself out to the public as part-owner, if he permitted, or suffered White to assume, and remain in, charge of the steamer as captain, the latter must be treated in a suit by third parties, as the captain in charge, by and with the *privity* and *consent* of the appellant. And although as captain he had no authority to pledge the credit of the appellant for the work done and materials furnished by the appellees, yet he will be held liable, if by his acts and conduct he has ratified the contract thus made by the captain.

What will amount to a ratification, must depend upon the facts and circumstances of the particular case. In speaking of the ratification of unauthorized acts of agents this Court in *Maddox vs. Bevan, et al.*, 39 *Md.*, 497, said: "In many cases it may be inferred from his receiving and holding the fruits of the contract. Long acquiescence also, without objection, and even silence of the principal, will, in many cases, amount to a conclusive presumption of the ratification of an unauthorized act, especially where such acquiescence is not otherwise to be accounted for, *or such silence* is either contrary to the duty of the principal or has a tendency to mislead the agent."

*Judgment reversed, and*
*new trial awarded.*

(Decided 15th January, 1875.)