WASHINGTON D. MERRITT *et al. v.* LOUIS WALSH *et al.*

The master of a vessel is the agent of the owners thereof; and in many respects his authority is, from the necessity of the case, more extensive than that of an ordinary agent.

The master of a vessel has no authority to bind the owners thereof by the allowance of a claim which was not a valid one against them.

But to give the master extraordinary powers as an agent of the owners, exigencies must arise calling for the exercise of the extraordinary authority of the master, as in case of stress of weather at sea; or where repairs are required to be made in a foreign port; or a ransom is exacted in case of a capture.

The several owners of vessels own in shares, though tenants in common as to the ownership of the vessel, are partners in regard to its earnings during any voyage upon which it is sent.

Being partners in such respect, they should all join in an action for the recovery of freight either of the parties from whom it was primarily due, or from their consignees who had collected it.

But where there is a defect from a nonjoinder of parties as plaintiffs, advantage can only be taken under the Code, by answer or demurrer, and an answer upon the merits waives all such defects.

THIS action was brought in the Superior Court of the City of New York by four persons, claiming to be part owners of the brig Crimea, J. P. Stinson, master, to recover against the defendants the plaintiffs' proportion of the freight and demurrage earned by the vessel on a voyage from Cardenas to the port of New York, where she arrived in June, 1857; and which money had been collected by the defendants as agents of the owners of the vessel. The complaint sets out the respective shares which each of the plaintiffs owned, two of them owning one-sixteenth each, and the two others each one-eighth. The other part owners were not parties to the action. The shares of the moneys which the defendants had collected for the plaintiffs' three-eighths of the vessel, after deducting the expenses paid by the defendants, and a sum which they had paid over to the owners, and including interest, was admitted to be $628.46, and it was conceded that the plaintiffs were entitled to recover that sum in case the defense was not sustained.

The defense was that the owners of the vessel were indebted to the defendants in the sum of about $1,400, for moneys advanced for them in May, 1855, of which the plaintiffs' proportion, if they were liable, would be just equal to the sum which they claimed to recover in this action; that on the arrival of the brig from Cardenas in June, 1857, the defendants claimed this sum of the master, threatening to proceed against the brig in admiralty for its collection, upon which he allowed the claim, receiving from the defendants the small sum in their hands over and above that amount, and giving them a receipt in full as for the balance due them on account of the brig and its owners, upon a statement by which the debt of 1855 was charged against the owners.

It appeared that the brig was registered at the custom house at Bath, Maine, and that the firm of Arnold & Co., of that town, were part owners, and were the agents for, and transacted the business of, the owners of the brig at that place, in the year 1855, and subsequently to March, 1857. On adjusting the accounts of a voyage which the brig had made in 1855, one Auld being master, the defendants acting as agents in New York, were, at that time, found entitled to a balance of $1,431.30, for which they drew upon Arnold & Co., at Bath, at thirty days, payable to their own order, which draft was accepted by the drawees, and after some delay was subsequently paid. Shortly after this time, the defendants accepted drafts for the accommodation of Arnold & Co. That firm subsequently failed, and the money paid upon these acceptances for accommodation, amounting to $1,500 and upwards, were never repaid by Arnold & Co., or any one.

It appeared that the brig made three voyages to New York in 1856, consigned to the defendants, who rendered their accounts with Arnold & Co., and on each occasion paid over to that house the balance due from them for the excess of their receipts over the disbursements according to the accounts. It was sworn to on behalf of the defendants that their accommodation acceptance for Arnold & Co. was given to place them in funds to pay their own acceptance of the draft of

May, 1855, for the defendants' account of that year above mentioned. That draft was, however, in fact, paid by cash and a check on a bank in New York, and the draft was surrendered to Arnold & Co.

At the close of the evidence, the defendants moved for a dismissal of the complaint on the ground that all the owners of the vessel should have been joined in the action, and because there was, as alleged, an improper joinder of parties. The motion was denied, and the defendants' counsel excepted. The defendants also maintained that the settlement with the master in June, 1857, was conclusive on the plaintiffs, but the judge refused so to hold, and to this there was an exception. The judge then inquired whether there was any dispute respecting the facts, when both parties answered that there was none. The court then directed a verdict for the plaintiffs for the sum agreed upon, which was accordingly given; the defendants again excepting. After an affirmance at a General Term, the defendants brought this appeal.

*Beebe, Dean & Donohue*, for the appellants.

*D. A. Hawkins*, for the respondents.

DENIO, Ch. J. The former account against the brig and her owners, which accrued in 1855, must be regarded as having been paid prior to 1857, when the present demand accrued. The defendants at the time drew upon the house of Arnold & Co., at Bath, for the amount of that account, and the draft was accepted by the payees and paid by them in cash. The acceptances which the defendants loaned to Arnold & Co. did not bind, or in any way affect the present plaintiffs. Although they were then part owners of the brig, and they were the agents of the owners, the act of procuring acceptances for accommodation for the purposes of their own house did not fall within the scope of their agency, and it is not shown to have been in any way connected with the business which they transacted for the owners of the brig. Arnold swears positively that he paid the draft drawn on him for the defendants' account of 1855, in cash and a

sight check on a bank, and he exhibits the draft itself, and the defendants' letter sending it to him, as paper which had been paid. The defendants' witness, who testified that the borrowed acceptance was in some way connected with the paid draft, does not explain the alleged connection, or the fact that the draft had been given up and extinguished. Moreover, the defendants abandoned the position, which is opposed to this view on the trial, for when inquired of whether there was any dispute as to the facts, admitted that there was none. But no point is made by the defendants on this argument that the account of 1855 was an existing claim against the owners of the vessel when they assumed to deduct it from the earnings of the voyage performed in 1857. The defense is placed upon the ground that Stinson, the master who sailed the vessel in the last mentioned year, had authority to bind the owners by the allowance of the claim, notwithstanding it was not a valid one against his employers. The master of a vessel is the agent of the owners; and for most purposes, the general laws of agency apply to the relation which subsists between them. But the account of 1855 accrued before Stinson became master, and when the navigation of the vessel was confided to another person as master. That account had, therefore, no connection with the agency exercised by him. Hence he had no shadow of authority to permit the money of his employers to be applied to the payment of an alleged indebtedness arising out of a transaction which was foreign to his agency.

In many respects, it is true, the authority of a ship's master is, from the necessity of the case, more extensive than that of an ordinary agent. He must frequently act in cases where it is impossible for the owners, or their general agent, to be consulted, and where the necessities of the business require that he should act promptly, and he must possess a very large authority, in case of distress of weather at sea, or when repairs are required to be made at a foreign port, or a ransom is exacted in the case of a capture. The defendants' counsel seeks to bring their case within these distinctions; but it is

very plain that they have no application. The vessel was at a domestic port, and, although the owners lived in another State, they could easily be informed of the proceedings which the defendants threatened to take against the vessel, and could defend themselves against these proceedings. The exigency did not arise for the exercise of any extraordinary authority in the master. The owners were therefore at liberty to repudiate the adjustment by which Stinson assumed to allow the account of 1855, which had been paid in that year. This they did by demanding the money which had been withheld by the defendants.

The other objections were not well taken. The several owners of vessels owned in shares, though they are tenants in common of the ship itself, are partners in regard to its earnings upon any voyage upon which it is sent. (Abbott on Shipping, 111, 115.) Regularly, therefore, they should all join in an action to recover freight, either from the parties from whom it was primarily due, or from the consignee who had collected it; and the objection in this respect might have been fatal under the former practice, if the nonjoinder were pleaded in abatement, and according to some authorities without such a plea. (Abb., 115, 116, and note to Am. ed. of 1846.) But by the Code of Procedure the objection can only be taken by answer or demurrer. (§§ 144, 147, 148.) The fact that the plaintiffs were together the owners of only three-eighths of the brig was explicitly stated in the complaint, and the defendants, without objection, answered upon the merits. The objection was waived. The point that the plaintiffs should have sued separately and not jointly, is not well taken. They were partners in the voyage and joint owners of the freight which the defendants withheld.

I am in favor of affirmance.

CAMPBELL, J. This action was by plaintiffs as owners of three-eighths of the brig Crimea, to recover their portion of the freight of the vessel, on a certain voyage. The defendants were agents of the vessel and had collected the freight. The defense was a set-off, on account of advances

made for the vessel some two years previous to the collection of the freight in question.

On the trial before Judge Pierrepont, in the New York Superior Court, it was admitted that there was no dispute about the facts, and the judge ordered a judgment for the plaintiff, and which was afterwards affirmed at the General Term. From the connected facts it appears that the defendants had been paid, by the firm of Arnold & Co., the advances which they made some two years before. The draft drawn by defendants for the amount due them, on Arnold & Co., who were then part owners and ship's husbands, were paid; that Arnold & Co. became afterwards indebted to the defendants could not affect the original payment.

The only serious question now raised is as to the right of these plaintiffs, as part owners, to maintain this action without including the other part owners or parties. This question is settled by the Code, § 144. The defendants should have demurred to the complaint.

Even if this action could not be maintained without joining the other part owners, the defendants should have demurred. The plaintiffs set out that they were owners of only three-eighths, and claimed to recover only three-eighths of the freight received by the defendants. The defect of parties, if it existed, appeared on the face of the complaint. The point was ruled in *Zabriskie* v. *Smith* (3 Kern., 322), where it appeared by the complaint that at the time of the false representations made, and for which the plaintiff received damages, one Gray was a member of the firm, though not made a party to the action. It was held the defendant should have demurred.

It seems very clear that this judgment should be affirmed.

Judgment affirmed.