CHARLES L. GAGER, Respondent, *v.* DWIGHT L. BABCOCK, Appellant.

Defendant was the nominal owner of a steam-tug. A., the real owner, managed her as master, exercised entire control over her, and received all her earnings. She was libeled in the District Court of the United States, and seized at Buffalo, for a penalty incurred by carrying passengers without a license. A. procured plaintiff to become bail for her discharge. A decree was rendered for the penalty, and plaintiff became bail upon an appeal bond, conditioned that defendant should pay " all such costs and expenses" as should be awarded against him. The decree was affirmed, and plaintiff paid the amount of the execution thereon. All this was without communication or consultation with defendant, who resided in the city of New York. Plaintiff brought this action to recover back the money paid, basing it upon the appeal bond.

*Held*, 1st, that plaintiff made the payment, not as surety upon the appeal bond, but as defendant in the decree, which was *in personam* against him as surety upon the first bond; also, that as the appeal-bond was not conditioned to pay damages there could be no recovery for the amount of the decree.

2d, that as the vessel was in a home port, and defendant near enough to be consulted, there being no pressing emergency, the master could not bind him.

(Argued May 19, 1871; decided September term, 1871.)

APPEAL from judgment of the General Term of the Supreme Court in the eighth judicial district, affirming judgment in favor of plaintiff entered upon the decision of the court. The action was brought to recover the sum of $675, which plaintiff alleged he had been compelled to pay as surety upon an appeal bond executed for the benefit of defendant.

The facts are as follows: John Adams built a steam-tug, called the L. L. Britton, and owned and managed her as master. Becoming embarrassed financially, he induced the defendant to take the title to her, and had her enrolled and licensed in his name. Defendant did not pay or agree to pay anything for her. Adams continued to run and manage her as master, and received all her earnings. The defendant never gave any directions in regard to her, never exercised any control over her, and never had any of her earnings, or any benefit from her, and did not know how, or for what, she was used. In June, 1857, said Adams used the tug for the transportation of passengers to a prize fight, without inspection and license, as required by the act of congress of July 7, 1838, entitled "An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam," and thereby said vessel incurred a penalty of $500. She was thereafter libeled, for the recovery of said penalty, in the District Court of the United States for the northern district of New York, and was seized by the marshal. To procure her release from the custody of the marshal, Adams procured the plaintiff, and one Kennedy, to sign a bond to the United States, as sureties, conditioned to abide the decree of the court in the admiralty suit. Adams appeared in that suit in the name of the defendant, and answered, and contested the same in his name; the court decided that the

United States was entitled to recover the penalty, and judgment was given against the said sureties therefor, with costs and expenses. Adams, in the name of the plaintiff, appealed to the Circuit Court of the United States, and, upon said appeal, signed a bond, together with the plaintiff, and one Hebard, whom he procured to sign with him, conditioned that the defendant should prosecute the said appeal with effect, and pay " all such costs and expenses" as should be awarded against him as such appellant. Said appeal was thereafter brought to a hearing, and the decree of the District Court was affirmed. Execution was issued upon the decree of the Circuit Court, and the plaintiff paid the amount thereof.

The defendant had no notice or knowledge of any of the proceedings, and neither directed nor sanctioned them. The plaintiff then brought this action upon the bond, given upon the appeal, to recover the money which he thus paid. The court decided that he was entitled to recover, and gave judgment in his favor. Other facts, so far as necessary, appear in the oppinion.

*A. P. Laning* for the appellant. The master of a vessel is not the general agent of the owner. (*Mitchison* v. *Oliver*, 5 Ellis & B., 419 ; 32 Eng. L. and Eq., 219, 232 ; *The Tribune*, 3 Sumner, 144 ; *The Flash*, Abb. Adm., 67 ; *Zany* v. *Jordan*, 37 Maine, 276 ; Story on Agency, §§ 118, 119.) The master cannot bind the owner in a home port. (*Bryant* v. *Ins. Co.*, 13 Pick., 543 ; *Pike* v. *Balch*, 38 Maine, 302 ; Marvin on Merch. and Salvage, § 3.) Defendant is not precluded from disputing his authority. (*Gardner* v. *Tyler*, 16 Abb., 17 ; *Many* v. *Wheeler*, 18 Abb., 1.)

*George B. Hibbard* for the respondent. As owner plaintiff was liable for Adams' contracts. (1 Parsons on Mari. L., 111 ; *Flanders* v. *Merritt*, 3 Barb., 201 ; *King* v. *Lowry*, 20 Barb., 532 ; *Provost* v. *Patchin*, 5 Selden, 235 ; *Kenzel* v. *Kirk* [in the Court of Appeals], 32 Howard, 269 ; 1 Parsons on S. and Ad., 109, 112 ; *Barker* v. *Highley*, 15 J. Scott [N.

S.], 27, 109 Eng. C. L. R., 26 ; Curtis on Rights and Duties of Seamen, 194. Under the condition of appeal bond that defendant "should make his appeal good," plaintiff was liable for full amount paid. (1 Stat. at L., 83 [Brightley's Dig. Laws, U. S., 256]; 2 Stat. at L., 244 [Brightley's Dig., 261]; 2 Conkling's Ad., 385.)

EARL, C. The defendant was the mere nominal owner of the vessel; and as between him and Adams the latter appears to have been the beneficial owner controlling the vessel and receiving her entire earnings. At the time of the seizure of this vessel the plaintiff also owned a vessel which was seized for a similar offence, and he proposed to Adams that if he would procure a surety for him, he, plaintiff, would sign for him, Adams. Adams then did procure a surety for him and he signed for Adams. Such is the evidence, and the court might well have inferred that the plaintiff signed the bond for Adams' benefit upon his credit, and not upon the credit of the defendant as the legal owner of the vessel.

The plaintiff in his complaint does not base his right to recover upon the first bond, which he executed to release the vessel from the marshal, and he does not, in his complaint, even allude to or mention that bond, and he does not mention the fact that he ever incurred any liability on account of that bond, or that any judgment or decree had been rendered against him as surety in such bond. He bases his right to recover entirely upon the bond given upon the appeal, and the payment of money by him as surety in such bond. It does not appear, however, that he ever paid a dollar as surety, on the appeal bond. As I understand it, the proceeding in the District Court was one *in rem* against the vessel, and after the bond was given to release the vessel, the bond took the place of the vessel, and the decree in that court was not one which could be enforced *in personam*, against the defendant as owner, because he did not sign the bond, but it was a decree *in personam* against the sureties, which could be enforced against them by execution. This

decree was upon the appeal affirmed in the Circuit Court, and a decree of affirmance was entered in that court. Execution was issued upon this last decree against the plaintiff, and he paid it, and for such payment he brought this action. He made the payment as defendant in the decree and execution, and not as surety upon the appeal bond. He would have been equally obliged to pay the execution if the bond had been signed by some one else, and he had not signed it. Hence, I am unable to see how this action, based upon a claim for money paid by plaintiff as surety upon the appeal bond, can be maintained. But further, the appeal bond was not conditioned to pay the damages, as well as costs and expenses, but simply to pay " the costs and expenses " awarded against him upon the appeal. Here there was no proof of the amount of the costs and expenses upon the appeal, and if the plaintiff had been prosecuted upon the appeal bond, I do not see how he could have been made liable for the amount of the decree appealed from, as well as the costs and expenses.

Hence, without going further, we find abundant reason for reversing the judgment appealed from. But if we so far assent to plaintiff's claim as to hold that he, as surety in the appeal bond, was liable to pay the whole amount of the decree in the Circuit Court, and that he did pay it as such surety, the result must be the same.

We will assume, as we must, that the defendant was the legal owner of the vessel, and that he permitted himself to be held out to the world as such by Adams, the master. He resided in the city of New York, and Buffalo, in the same State, was the home port of the vessel, in which she was seized. At the time the appeal bond was given, the vessel was in no peril. She had been released and restored to the master. Under such circumstances, Adams had no authority, as master, to prosecute an appeal, or to give the appeal bond. It is not necessary to determine what authority he would have had in a foreign port, because masters have greater authority in a foreign than they do in a home port. He was in the home port, near the residence

of the owner, and could have communicated with him. A master, in a case of extreme necessity, has authority to sell the cargo. But in *Bryant* v. *Commonwealth Ins. Co.* (13 Pick., 543), where a vessel was stranded on the coast of Virginia, and the cargo was landed without damage, and was not of a perishable nature, and might have been kept in reasonable safety until the owners and insurers, who lived in Massachusetts, could be heard from, it was held that the master had no authority to sell the cargo, and break up the voyage, without waiting until the owners and insurers could be consulted. Mr. Justice PUTNAM, in delivering the opinion of the court, says: "It would be clear ·that if the master assumed to act for the owners and underwriters, when they were present, or so near as to be consulted in regard to the disposition of the property, his acts, under such assumption of authority, would not bind them." The master is the agent of the owner, appointed by him, and is authorized to act for him in all matters which are fairly embraced within the scope of his appointment. He has the control and management of the vessel, and can hire and discharge seamen, can, ordinarily, purchase supplies and procure repairs upon the credit of the owner, and, in case of any emergency, in the absence of the owner, do whatever is necessary to save the vessel or to prosecute his voyage. But when the owner is himself present, or within easy access, that agency of the master, which is founded on necessity, disappears, for the necessity has ceased to exist. (1 Parsons on Mar. Law, 380.) The contracts which he is authorized to make must relate to the condition or the use and employment of the ship. Here the owner was within easy access, and the appeal and giving of the bond had no relation whatever to the condition or use or employment of the vessel. All peril to the vessel had passed. In *Belden* v. *Campbell* (6 Eng. L. & E., 473), it was held that the master had no authority to borrow money to pay for work already done; and, therefore, where the ship, bound for Newcastle, was towed into that port, no agreement having been previously made that the towage was to be

paid for immediately, and the master, six days afterward, borrowed money to pay for the towage, it was held that the owner was not liable. Here the bond was given long after the liability, if any, of the owner had been incurred. To test it, could the master have borrowed money of the plaintiff, upon the credit of the owner, to pay the decree? I think not. And if he could not do this, how could he bind the owner by procuring the plaintiff, in any way, to become surety for the payment of the decree? Hence I conclude that within principles of law, that admit of no dispute, the master had no authority to bind the owner to the plaintiff, by the contract of indemnity, implied by his becoming surety upon the appeal.

But it seems to be claimed, on behalf of the plaintiff, that, admitting all this, inasmuch as the defendant was bound by the decrees of the District and Circuit Courts, and could not impeach them, he is, irrespective of the authority of the master, bound to the plaintiff, who became his surety upon the appeal. The master appeared for the defendant in those courts, and procured an attorney to appear for him; and it may be that he is so far bound by the decrees pronounced against him, that he cannot attack or impeach them collaterally. (*Brown* v. *Nichols*, 42 N. Y., 26.) An unauthorized attorney may appear in an action for a party, and the party may be bound by the judgment pronounced against him; but yet he may not be bound by all the attorney may assume to do for him. If the unauthorized attorney should procure some one to pay or become security for the judgment, he could not bind the party. And suppose he should commence a suit and procure an attachment or order of arrest to be issued, and procure some one to sign as surety an undertaking, would it be claimed that he could thus place the party for whom he acted without authority under any obligations to the surety? And yet the party might be bound by the judgment. A person who becomes surety for a party in a legal proceeding must see to it that

he becomes such upon the request of the party himself, or his attorney or agent duly authorized to act for him.

The plaintiff's case is not strengthened any by the fact that the plaintiff signed the first bond, and became liable thereon, because he has not in any way based his right of action upon that bond, and I will not, therefore, inquire whether the defendant was bound to indemnify him as surety upon that bond. But it may well be doubted whether he was, as the vessel was in her home port, and the owner within easy access where he could have been consulted.

The judgment of the Circuit and General Term must be reversed and new trial granted, costs to abide event.

LEONARD, C.    The evidence was to the effect that the master defended the libel against the propeller L. L. Britton, prosecuted by the United States for a penalty incurred by running her and carrying passengers without an inspection and certificate, as required by law for that purpose, and procured the plaintiff to become bail in such libel proceeding for the discharge of the propeller; and again, after decree of the District Court of the United States for the penalty, prosecuted an appeal to the Circuit Court, and procured the plaintiff to become bail on such appeal, without any communication or consultation with the defendant as owner. These proceedings were had in the District Court for the northern district of New York, and the propeller was arrested and the bail given, and the defence interposed at Buffalo, while the defendant resided in the city of New York. The justice of the Supreme Court, before whom this action was tried, has found as a fact that the master, as the agent of the defendant, prosecuted such appeal, and as such agent applied to the plaintiff to become bail on the appeal, and that the plaintiff with the master and another executed the appeal bond.

The said justice has also found, as a conclusion of law, that the master had authority, as agent of the defendant, to procure the plaintiff to execute said bond for the defendant; that

the defendant, having the legal title to the said propeller, and allowing himself so to be held out to the world, is liable on the obligations entered into for the boat at the request of the master.

It is entirely clear from the evidence, as well as from the facts and conclusions of law found by the said justice, that the only authority of the master to defend the libel, procure the plaintiff to become bail for the discharge of the propeller, take the appeal, and procure the plaintiff also to become bail on the appeal as agent of the defendant, was derived from his relation to the propeller as master, the defendant being her owner.

The rule as to the authority of the master at a home port to pledge the owner's credit is as follows : " If the owner or his personal agent be at the port, or so near to it as to be reasonably expected to interfere personally, the master cannot, unless specially authorized, or unless there be some usual custom of trade warranting it, pledge the owner's credit at all ; but must leave it to him or his agent to do what is necessary." (Abb. on Ship., pp. 140, 141 [marginal], and cases there cited.) The rule is different if the vessel be at a foreign port or at a distance from the owner's residence, and the necessity is pressing. Then the occasion authorizes the master to act at once and pledge the owner's credit.

In the case before the court there was no pressing emergency. The vessel was at Buffalo and the owner at New York. Communication with the owner required but two or three days. He could have been readily consulted and his wishes ascertained. Under the general authority of the master, he had not the least authority to bind the owner to the plaintiff for becoming security for bonding the propeller on the arrest, or afterwards for the appeal bond. In fact, there appears to have been not the shadow of a defence to the libel, so far as the testimony of the apostles shows, and it should not have been defended. It appears to have been done on the credit of the master, in fact, inasmuch as he undertook to be bail for the plaintiff for the discharge of his vessel, arrested for

a violation of the same law, and incurring the penalty therefor on the same occasion, if the plaintiff would unite with him in giving security to obtain the discharge of the L. L. Britton. There should be a new trial, with costs to abide the event.

All concur.

Judgment reversed.