WILLIAM MITCHELL v. ROBERT CHAMBERS, WARREN FULLER AND THOMAS G. LESTER, SURVIVORS OF GARRY CHAMBERS.

*Bail for release of vessel—Power of ship's husband to bind co-owners.*

Any written agreement that constitutes part of the bargain by which title has been acquired may properly be put in evidence where the purchase is to be shown.

Non-joinder of proper co-defendants must be taken advantage of by plea in abatement and does not continue open to objection till the submission of the case.

A general count for money paid is sufficient in an action by a bondsman to recover back money paid for the benefit of his principal; and if the action is brought on both general and special counts, any objections based on the latter are immaterial.

Findings are not open to dispute; but additional facts cannot be presumed, and must be regarded as not having occurred.

Proceedings in another court when introduced collaterally, cannot be questioned for error or irregularities where no jurisdictional defect is alleged against them.

Part-owners of a vessel are by construction of law, parties to any proceedings *in rem* against her, and are entitled to intervene actively and contest its liability, the extent of the claims against it, and the validity of its seizure and detention.

Judgments against a vessel on a claim against her, and against her managing owner and the surety upon a recognizance for her release from detention, are part of a general adjudication of the liability.

The several part-owners of a vessel are usually co-tenants, not partners, and will not be regarded as partners unless it distinctly appears that they are so.

A vessel-master has no authority as such to find bail for the ship in behalf of the owners.

The ship's husband cannot bind co-owners by obtaining bail to release the vessel from seizure on civil process if the co-owners themselves were not personally liable and neither authorized him to obtain it or acquiesced, and if there was no such emergency as would call for the assumption of personal responsibility.

The assent of vessel-owners to the acts of the ship's husband cannot be implied from their silence except as to such acts as are fairly appropriate to occasions with which he is usually allowed to deal.

Co-owners of a vessel are not personally liable on claims incurred by it before they acquired their interest.

The necessity for obtaining the release of a vessel from seizure does not necessarily imply that the release was obtained on such conditions as to bind owners personally.

It seems that a ship's husband is not warranted in assuming extraordinary powers without obtaining authority from the owners if they can be readily communicated with, as by telegraph.

One who consents to become surety for a party in a legal proceeding must see to it that he acts on the request of the party himself or his attorney or agent duly authorized to represent him in that respect.

The interest of the managing owner of a vessel entitles him to act for himself in obtaining bail for its release from detention, and the bail cannot hold co-owners personally liable for the security without showing that they were parties to the transaction.

Case made after judgment from Bay.  Submitted January 22.  Decided April 7.

Assumpsit.  Plaintiff brings error.

*Holmes, Collins & Stoddard* for plaintiff in error.  Joint owners of a vessel are partners as to its earnings while run upon their joint account, *Muldon v. Whitlock* 1 Cow. 290; *King v. Lowry* 20 Barb. 532; *Williams v. Lawrence* 47 N. Y. 462; Abbott on Shipping 111, 115; the managing owner of a vessel can obtain bail for her release from seizure, and his co-owners will be liable to the bail, *Bangs v. Lowber* 2 Cliff. 157; *Burns v. Parish* 3 B. Mon. 8; *Hikes v. Crawford* 4 Bush 19; *Elmendorph v. Tappan* 5 Johns. 176; *Purviance v. Sutherland* 2 Ohio St.

478; *Weaver v. Tapscott* 9 Leigh 424; *Hamilton v. Johnston* 82 Ill. 40.

*Hatch & Cooley* for defendants Chambers, as to the admissibility of a contract for bail made by the managing owner of a vessel to free it from detention, as evidence to bind co-owners, cited *Pipp v. Reynolds* 20 Mich. 88; *Turner v. M'Carthy* 22 Mich. 265; *Halsted v. Francis* 31 Mich. 113; *Hurd v. Brown* 37 Mich. 484; *Hayes v. Knox* 41 Mich. 529; a surety for one partner to secure the payment of a firm debt has no redress against the other partners, *Tom v. Goodrich* 2 Johns. 213; *Walden v. Sherburne* 15 Johns. 409; *Krafts v. Creighton* 3 Rich. 273; *Knox v. Devens* 5 Mas. 380; *Sluby v. Champlin* 4 Johns. 460; a joint owner of a vessel is not a partner with other owners thereof, *Sheehan v. Dalrymple* 19 Mich. 239.

GRAVES, J.   Mitchell having paid certain executions from the District Court of the United States for the eastern district of Michigan, issued on a recovery in admiralty upon a stipulation in the nature of a recognizance in which he had joined as surety for the release of a vessel under seizure for previous supplies. repairs and wages, sued Lester, Fuller and the two Ch. bers, as respective part-owners of the vessel, for what he had expended as so much money paid to their use.   No defense was made except on the part of Chambers and Chambers.   They pleaded the general issue, and denied on oath that they had anything to do with the giving of the stipulation or recognizance.   The learned circuit judge heard the cause upon the facts, and made a special finding and awarded judgment thereon in favor of Mitchell.   The contending defendants proceeded to bring up the controversy for review upon several points of law by means of a case, but before the record was made up and signed, one of them, Mr. Garry Chambers, died. His death was suggested and the case was then completed and certified, and is now before us.   The findings are as follows:

## I.

That prior to the 15th day of March, 1875, the propeller Dunkirk was owned by the following parties and in the following parts : the defendant Thomas G. Lester, one-half; one Samuel Murdock, one-fourth, and one George Delmage the remaining one-fourth; and that on the said 15th day of March the said Samuel Murdock sold his said one-fourth part of the said propeller to the defendants Warren B. Fuller, then residing in Wenona, Michigan, and Garry Chambers and Robert Chambers, residing in Genesee county, Michigan; and that on said date the said Murdock by a written bill of sale in the usual form, conveyed to said Chambers, Fuller and Chambers, jointly, his said one-fourth part of said propeller, and took from them their joint contract, in which they agree with him in consideration of said sale, among other things, as follows :

"This memorandum of an agreement made and entered into this 15th day of March, 1875, by and between Warren B. Fuller, of Wenona, Michigan, and Garry Chambers and Robert Chambers of Flint, Michigan, of the first part, and Samuel Murdock, of Bay City, Mich., of the second part, witnesseth :

"For and in consideration of the sum of one thousand two hundred and ninety-two dollars lawful money of the United States to them in hand paid by the said party of the second part, the said party of the first part agrees to pay or cause to be paid a certain mortgage on one-quarter of propeller Dunkirk, for one thousand dollars, with interest at ten per cent, said mortgage bearing date of August 15th, 1874, and due August 15th, 1875, in favor of Amos Easton. Also two hundred and ninety-two dollars of sundry claims against one-quarter of said propeller Dunkirk, and also to pay any and all other legal claims now due against said one-quarter, and to see the said Samuel Murdock harmless from the same.

"Said party of the first part further agrees that on the fifteenth day of August, 1876, to pay or cause to be paid to the said party of the second part the sum of four hundred and fifty-eight dollars, the same being the difference between one thousand seven hundred and ninety-two dollars paid and assumed by the said party of the first part, and two thousand two hundred and fifty dollars, the purchase money agreed on by said parties for one-quarter of propeller Dunkirk.

"And it is further agreed by and between said parties that should any legal claims come against said one-quarter over and above the two hundred and ninety-two dollars mentioned above, then it may be lawful for said party of the first part to pay said amount out of said four hundred and fifty-eight dollars.

"Witness hands and seals this 15th day of March, A. D. 1875.

<table>
<tr><td></td><td>W. B. FULLER,</td><td>[L. S.]</td></tr>
<tr><td></td><td>GARRY CHAMBERS,</td><td>[L. S.]</td></tr>
<tr><td></td><td>ROBERT CHAMBERS,</td><td>[L. S.]</td></tr>
<tr><td></td><td>SAM'L MURDOCK,</td><td>[L. S.]</td></tr>
</table>

JOHN McDERMOTT."

## II.

That prior to the said 15th day of March, 1875, the said Thomas G. Lester was the managing owner of said

propeller Dunkirk, and continued to act as such managing owner until the close of navigation of that year, and that shortly. after the said 15th day of March the said defendant, Warren B. Fuller, became the master of said vessel and remained such during the remainder of the season of navigation of 1875.

## III.

That said propeller Dunkirk was a vessel of 622 42-100 tons burthen, and was from said 15th day of March, 1875, until the close of the season of navigation of that year, run and operated on the joint account and for the joint benefit of her owners, and was engaged in carrying lumber and towing other barges loaded with lumber on the great lakes, and during the times herein mentioned Bay City, Mich., was her home port.

## IV.

That on the second day of October, A. D. 1875, the said propeller Dunkirk was lying at Bay City, Michigan, with a tow of vessels on the point of leaving and ready to leave said port to carry lumber loaded on her, and to tow said vessels to the port of Sandusky in Lake Erie; and that while situated as aforesaid the said propeller Dunkirk was seized by a deputy United States marshal on attachments issued out of the District Court of the United States for the Eastern District of Michigan, in a suit *in rem* on the libel and intervening libels of George A. Coreon, Duncan and Neil McKinnon and Frank Williams against said propeller Dunkirk. That said claims were separate and distinct claims arising at different times and for different services contracted at the times hereinafter mentioned; that said proceedings were commenced by the filing of the libel of said Coreon and the issuing of an attachment thereon; that afterwards said Duncan and Neil McKinnon filed an intervening libel therein and an attachment was issued thereon, and that afterwards said Williams filed an intervening libel therein and an attachment was issued thereon. That it was desirable and for the benefit of the owners that said vessel should be permitted to proceed on her destination, and that the defendant Thomas G. Lester, then managing owner as aforesaid, and the defendant Warren B. Fuller, then master as aforesaid of said propeller Dunkirk, while thus acting as such managing owner and master as aforesaid, requested the plaintiff to become a surety on the stipulation hereinafter referred to for the release of said propeller. That in pursuance of said request the plaintiff signed and executed as surety the said stipulation on the 2d day of

October, a true copy of which is set forth in the special count in plaintiff's declaration. And that Lester signed the said stipulation as principal and as claimant.

## V.

That upon such stipulation being executed as aforesaid, the same was delivered to said deputy marshal, who upon the receipt of the same released said propeller, and that thereupon said propeller proceeded upon her destination with her cargo and vessels in tow. That the claim of George A. Coreon and of Duncan and Neil McKinnon, for which their libels were filed, were claims which accrued against said vessel during the season of 1874, and while said vessel was owned as above stated by said defendant Lester, and by said Delmage and Murdock. That the claim of said Franklin Williams for which said libel was filed, accrued during the year 1875, and while said vessel was owned by defendants Lester, Fuller, R. Chambers, G. Chambers and said Delmage. That after said last mentioned claim accrued, said Delmage sold and conveyed his one-fourth interest in said vessel to Messrs. Noyes and Reed, of Buffalo, N. Y., and that at the time of the seizure of said vessel and the giving of the stipulation hereinbefore referred to, said vessel was owned, one-half by defendant Lester, one-fourth by defendants Fuller, R. and G. Chambers, and one-fourth by said Noyes and Reed; and that said Noyes and Reed at the time of the signing of said stipulation and the commencement of this suit, resided in the State of New York.

## VI.

That afterwards such proceedings were had in the said District Court of the United States for the Eastern District of Michigan, that decrees were taken in said admiralty cases as follows, that is to say:

On the libel of George A. Coreon, a decree for $34.50 debt and $15 as costs of suit. On the libel of Duncan. and Neil McKinnon for $149.89 debt and $36.70 as costs of suit; and on the libel of Franklin Williams for $314.22 debt and $39.20 as costs of suit. That said defendants Chambers were not served with process in said cause, and did not appear therein; and that the decrees taken therein were against said vessel, her apparel, &c. That afterwards and in accordance with the rules and practice of said court, judgments were duly entered against Lester as claimant of said vessel, and said Mitchell as surety upon said stipulation, for the several amounts decreed against said vessel upon said libels.

## VII.

That afterwards and in accordance with the rules and practice of said court, a *fi. fa.* was issued on each of said decrees, and placed in the hands of the proper officer for .collection, and they not being paid by defendants or any of them, were paid by plaintiff at the times , and in the amounts as follows, that is to say:    On the *fi. fa.* on the decree of Williams and accruing costs, $381.09 on the 16th day of Dec., 1875; on the *fi. fa.* on the decree of Coreon and accruing costs, $60.90, and on the *fi. fa.* on the decree of Duncan and Neil McKinnon, the sum of $205.74. The amounts of said last items, viz., the $60.90 and the $205.74, were paid on the 15th day of March, 1876.

### FINDINGS OF LAW.

And the said court finds as conclusions of law from the foregoing facts:

1st. That the defendants Chambers, Fuller and Chambers became joint owners of one-fourth part of the propeller Dunkirk, on the 15th of March, 1875.

2d. That by the contract of that date the said Chambers, Fuller and Chambers became personally liable for the claims then outstanding against the part of said propeller purchased by them.

3d. That the defendants in this case, at the time of the execution of the aforesaid stipulation of October 2d, 1875, were, together with George Delmage, personally liable to said Williams on the claim set forth in his said libel.

4th. That at the time of the execution of said stipulation by the said plaintiff, the said claims of said Coreon, Duncan and Neil McKinnon and Williams were liens upon the said propeller. .

5th. That by the seizure of said propeller under the attachment issued against her on the said libels and intervening libels of said Coreon, Duncan and Neil McKinnon, and Williams, the said propeller became subject to the jurisdiction of the United States District Court for the Eastern District of Michigan, in admiralty, and was in the custody of said court, and subject to the liens of the said libellants in said proceedings at the time of the signing of said stipulation as aforesaid.

6th. That the signing of the said stipulation by the defendant Lester, and the procuring of the same to be executed by the plaintiff, were acts done by him within the scope of his powers as managing owner, and that all the defendants became bound thereby to respond to the plaintiff upon his being subjected to the payment of the claims of the said libellants.

7th. That the execution of said stipulation and the payment on said writs of *fi. fa.* by the plaintiff extinguished the indebtedness owing to said Coreon, Williams and Duncan and Neil McKinnon, and released said propeller from all claims or liens of said libellants on said vessel and discharged the defendants from all personal liability on such indebtedness, and that the defendants are liable to the plaintiff in this action for the amount of said payments with interest at 7 per cent from the time of such payments respectively.

*Dated June 24, 1879.*

S. M. GREEN,
*Circuit Judge.*

There are many exceptions in the record to rulings concerning evidence, but only one appears to be insisted on.

It is objected that the contract dated March 15th, and embodied in the finding, was not admissible. It was made at the same time Fuller and defendants Chambers became part owners by purchase from Murdock, and was a part of that transaction. If their purchase and acquisition of title was a matter proper to be made out by an exhibition of the facts, it was competent to show the bargain, and this contract was a portion of that bargain. The whole group of facts to prove that Fuller and Chambers bought in on the 15th of March was offered and received in pursuance of the plaintiff's theory of the action, and there is no occasion for making it a question to be separately decided.

The intimation in the brief of defendants' counsel that the right to take advantage of the non-joinder as defendants, of two part-owners living in New York, was still available when the case was submitted, has no force whatever. If persons who ought to have been made co-defendants were not joined, the defect should have been taken advantage of by plea in abatement. 1 Chitty's Pl. (16th ed.) 53, 54; Story on Part. §§ 454, 455. The effect of the peculiar proceedings at the trial and of the respective rulings, was to leave the question of non-joinder to stand precisely as it did when the trial opened, and hence there was no foothold for the point.

The general count for money paid was sufficient for the cause of action contended for (1 Chitty's Pl. 361, 362 and notes) and it follows, therefore, that the special count is not a proper subject for controversy, and all questions which derive their importance from viewing that as an essential statement of the cause of action must be laid aside.

The facts found by the learned judge are not open to dispute. They are here conclusive. Any review by this court must proceed on that assumption. At the same time no additional facts can be intended. Anything not fairly comprehended by the finding must be considered as not existing.

At the time of the suit in the District Court of the United States the persons made defendants in this suit were respectively part-owners of the vessel. That action was against the vessel and not against persons. But by the very nature of the case, as one against a thing of which the Chambers were part owners, they were to certain purposes parties by construction of law. They were entitled to intervene actively, and contest the liability of the vessel, the extent of the claims, as well as the validity of the seizure and detention. They did not do so, and the proceedings have remained wholly undisturbed. It would be no answer to say that, in point of fact, the action was not known to defendants until it was too late. No one imputes any jurisdictional defect, and of course the proceedings cannot be questioned here on any charge of error or irregularity. *Cooper v. Reynolds* 10 Wall. 309.

The ship was adjudged liable for the claims brought against her, and inasmuch as the stipulation or recognizance was given and taken in her place (*The Steamer Webb* 14 Wall. 406) the court according to the course in the admiralty, gave judgment upon that against Lester, the principal, and the surety, Mr. Mitchell. Each of these determinations was a part of the general adjudication. *The Alligator* 1 Gall. 145; *McLellan v. The*

*United States* id. 227; *Bartlett v. Spicer* 75 N. Y. 528; *United States v. Ames* 99 U. S. 35; *The Palmyra* 12 Wheat. 1.

In the existing state of the litigation these results must be accepted. It is impossible for defendants to go back and contend that the claims were not valid charges against the vessel. That they were so stands established by an adjudication which, whether correct or incorrect, is binding here on defendants. Hence it follows that all objections and matters of defense which suppose any right to contend that the ship was not so liable are wholly inadmissible. Thus far the case is with the plaintiff.

But there is a further consideration which is not free from difficulty. There arises the general question whether the facts found by the circuit judge make out a cause of action in Mitchell's favor against Chambers as for money paid by him to their use. And this general question is divisible into two of a more precise character: *first*, whether upon the finding, it appears that Lester and Fuller, or either of them, had authority to stipulate in such manner for the release of the vessel as to create a personal though contingent liability upon the part of Chambers for an amount up to its value; and *second*, whether it appears from the finding that the stipulation was given to operate in the interest of the defendants Chambers, and was so made as to have the effect to bind them personally, and oblige them to make up to the plaintiff as surety whatever he should be compelled to pay.

*First.* As to the question of authority, and in respect to which the case made by the finding must be adhered to.

Fuller and Lester were severally part-owners. At the same time the latter was managing owner or ship's husband, and the former was master. The vessel was at Bay City, found to have been her home port; and

the home port, under the laws of the United States, is
that at, or nearest to which, the owner, if there be but
one, or if more than one, the husband or acting and
managing owner, usually resides.   U. S. Rev. St. (2d
ed.) § 4141; *White's Bank v. Smith* 7 Wall. 646; *Morgan v. Parham*, 16 Wall. 471.   The defendants Chambers were residents of Flint, in the county of Genesee,
which was near by.   The several part-owners were not
partners in respect to the vessel.   Their relation was
that of co-tenants.   That is the ordinary relation, and
they will not be regarded as partners unless the fact is
distinctly shown (3 Kent's Com. 155; *Wetherell v. Spencer*
3 Mich. 123; *Macy v. De Wolf* 3 Woodb. & M. 193),
and there is no such finding.   The case can, therefore,
derive no aid from the rule of agency applicable to those
who own as partners.   And in the present state of the
law it cannot be maintained, on the facts found by the
circuit judge, that as mere part-owners Lester and Fuller were competent to find bail for the ship on the behalf and responsibility of the defendants Chambers, and
it is very clear that in his character of master, Fuller had
no such power.   Story on Part. §§ 421, 422, 453; *Brodie
v. Howard* 17 C. B. 109:  33 E. L. & E. 146;  *Mitcheson
v. Oliver* 5 El. & Bl. 419;  32 E. L. & E. 219; *Revens v.
Lewis* 2 Paine C. C. 202; *Hardy v. Sproule* 31 Me., 71.

This conclusion is not supposed to be contested, and
it brings the inquiry under the first head to the point
whether Lester's position as ship's husband clothed him
with the power.   And this is a question of agency and
not one concerning the existence, character and force of
a pure element of part-ownership.

"The ship's husband," says Chancellor Kent, "may
either be one of the part-owners or a stranger, and he
is sometimes merely an agent for conducting the necessary measures on the return of the ship to port; but
he may have a more general agency for conducting the
affairs of the vessel in place of the owners, and his contracts, in the proper line of a ship husband's duty, will

bind the joint owners. His duty is, generally, to see to the proper outfit of the vessel, as to equipment, provisions and crew, and the regular documentary papers; and though he has the powers incidental and necessary to the trust, it is held, that he has no authority to insure or borrow money for the owners, or bind them to the expenses of lawsuits." 3 Kent's Com. 157. He cites *French v. Backhouse,* 5 Burr. 2727; *Sims v. Brittain* 4 B. & Ad. 375; *Bell v. Humphries* 2 Stark. 345; *Campbell v. Stein* 6 Dow 134; 1 Bell's Com. 504; Bell's Principles of the Law of Scotland § 449; Collier on Part. bk. 5, ch. 3 § 4; Story on Agency § 35. To these citations may be added, Story on Part. § 446; 1 Pars. Maritime Law 97; Abbott on Shipping 107, 137; 2 Duer on Ins. 200; 2 Pars. Cont. 268; Evans' Agency by Ewell 219, 220; *Holcroft v. Wilkes* 16 Ind. 373; *McCready v. Woodhull* 34 Barb. 80; *Hewett v. Buck* 17 Me. 147; *Patterson v. Chalmers* 7 B. Mon. 595; *Hoogland v. Wight* 7 Bosw. 394; *Foster v. United States Ins. Co.* 11 Pick. 85; *Turner v. Burrows* 8 Wend. 144.

In describing the authority generally possessed by the ship's husband, Judge Story says he "is understood to be the general agent of the owners, in regard to all the affairs of the ship in the home port," and as such "is intrusted with authority to direct all proper repairs and equipments, and outfits for the ship; to hire the officers and crew; to enter into contracts for the freight or charter of the ship, if that is her usual employment; and to do all other acts necessary and proper, to [prepare and] dispatch her for and on her intended voyage. But his authority does not extend to the procuring of any policy of insurance on the ship, either in port, or for the voyage, without some express or implied assent of the owner." Story's Agency. § 35. The same learned writer, in his work on Partnership, discusses the implied authority of one part-owner to bind another, and observes that "one part-owner may bind the others by his contract for repairs and materials and expenses of outfits by implication, when there is no known disagreement among them,

and there is an *acquiescence* in what is done, or is doing. But there are certain other authorities, which do not arise by implication of law under ordinary circumstances; and, therefore, such authorities, whether exercised by a ship's husband, or by a mere part-owner, will not bind the other owners, unless there is either direct proof, or a strong presumption, that they have been positively conferred upon them. Thus, for example, neither the ship's husband, nor any part-owner, as such, has a right to insure the ship, or to borrow money, on account of the owners, or of other part-owners; or to pledge their shares in the ship for the expenses of a law suit." § 446.

Parsons observes that the managing owner or ship's husband is the general agent of all the owners in respect to the ship; but that it is not customary to define his powers and duties by any written or oral bargain, because they are supposed to be sufficiently determined by usage. In referring to the limits of the authority, he says the managing owner cannot borrow money and bind the owners for it, nor give up the lien for freight earned, nor insure the ship for the owners, nor purchase a cargo for them without their special authority. 2 Pars. Cont. 268.

There is no finding of any *express agreement* in regard to Lester's powers as ship's husband, nor any finding of usage concerning the nature and extent of such agency, nor any finding that the proceedings to release the vessel were accepted or acquiesced in by defendants Chambers as proceedings on their account. Neither is there any ascertained final inference of fact on the subject. The whole question is left as one of legal implication from the group of findings reported by the learned judge.

It recurs to inquire whether they are competent to imply the power claimed. Lester held, in respect to the defendants Chambers, just such authority as their silent indifference and acquiescence admitted, and no more; and it will be conceded that their assent, as drawn from their saying nothing and doing nothing, can be made

to cover only such incidents and occasions as the ship's husband is usually allowed to deal with, and to justify only such steps on his part as are fairly appropriate to the incident or occasion arising.

It is said in the finding, that the propeller "was lying at Bay City with a tow of vessels, on the point of leaving and ready to leave said port to carry lumber loaded on her, and to tow said vessels to the port of Sandusky, in Lake Erie," at the time of seizure, and "that it was desirable and for the benefit or the owners that said vessel should be permitted to proceed to her destination." She was therefore under seizure on civil process out of the admiralty, at her home port, and in a state of security; and it is not found that either of the demands for which she was detained was a personal charge against the defendants Chambers, or included in those designed to be provided for by the agreement with Murdock, and the fact cannot be presumed by the court. Granting, for the purpose of this review, that the claims were liens on the vessel, no facts are found to show that they were incurred in any such manner as to work out a personal charge against Chambers. On the contrary, the facts disprove such liability in respect to two. They were incurred before those parties acquired any interest. *Mackenzie v. Pooley* 11 Exch. 638 : 34 E. L. & E. 486; *Myers v. Willis* 17 C. B. 77 : 36 E. L. & E. 380; *Macy v. Wheeler* 30 N. Y. 231; *Weber v. Sampson* 6 Duer 358; *Donnell v. Walsh* 6 Bosw. 621; *Howard v. Odell* 1 Allen 85.

And as to the claim of Williams for repairs, there is no finding as to where or at whose request or under what circumstances they were made. Concede that their necessity cannot be questioned now, and still it is not to be assumed that the transaction was under such conditions as to bind the defendants Chambers as personal debtors. Story on Agency §§ 119 119a 120 121; 3 Kent's Com. (Holmes' ed.) §§ 138–173 and notes; *Freeman v. Buckingham* 18 How. 182; *Beldon v. Campbell* 6 Exch. 886 : 6 E. L. & E. 473; *Pentz v. Clarke* 41 Md. 327; *The Troubadour*

L. R. 1 Ad. & Ec. 302; *The Kalorama* 10 Wall. 204, 214; *The Woodland* 7 Ben. 110; *Arthur v. Barton* 6 M. & W. 138. For the purpose of this case the situation of the defendants Chambers relative to the stopping of the vessel and the probable effects of the proceeding must be looked at under the assumption that they were not personally liable at all for the demands, and that apart from their chance to gain something by sharing in future earnings, their sole interest was that of owners of one-sixth of the vessel.

There is no finding of the vessel's value or of her time, or any finding to explain in any way, in dollars and cents, the necessity there was for her speedy departure, and there is hence no basis for legal belief that the defendants Chambers could gain anything by the assumption of a personal responsibility to release her. In short, the facts afford no ground for saying that their interest favored any personal risk, in order to permit her "to proceed to her destination."

The exigency did not present one of those ordinary incidents which the ship's husband may of course meet and overcome under his usual power, without recourse to an owner, where that is practicable. And there was no such ground for inferring authority as may exist where an owner leaves the ship's husband to face an emergency without the benefit of an express direction as to the course he is to pursue in such an event, and at the same time either withholds or does not afford opportunity to obtain his advice or decision. The case was one which dictated a reference, if practicable, to the defendants Chambers, if it was intended to bind them personally, and according to the finding there was no obstacle in the way of doing so. They were in the neighboring county of Genesee, and where they could be speedily communicated with, and most likely within the space of a few minutes, by resorting to the telegraph. *Merritt v. Walsh* 32 N. Y. 685; *Gager v. Babcock* 48 N. Y. 154; *Beldon v. Campbell*, supra; *Woodruff & Beach Iron Works etc. v. Stetson* 31 Conn. 51; 2 Bell's Com. 199.

Finally, the case made by the finding does not contain "either direct proof or a strong presumption" that the authority was "positively conferred," and it therefore does not establish what, according to the doctrine laid down by Judge Story, was absolutely requisite to "bind" the defendants Chambers. Story on Part. § 446.

In the able argument submitted for the plaintiff the authority chiefly relied on was *Barker v. Highley* 15 C. B. (N. S.) 27 : s. c. L. J. C. P. 270, and it was pressed with much force; and perhaps no other single case can be found having so many points in common with the one before us. The broad proposition was there laid down that "the ship's husband, or managing owner, is an agent appointed by the owners to do what is necessary to enable the ship to prosecute her voyage and earn freight."

Now it is scarcely necessary to say that this statement cannot be taken literally and without regard to the facts which bore upon the controversy and qualified the discussion. The court naturally assumed there would be no failure to understand that what was said was with tacit reference to all the modifying conditions in the case; and felt, consequently, that it would be an idle performance to expressly repeat them.

The statement must be restricted to the question as shaped and modified by the state of facts of which all were cognizant, and about which there was no thought of controversy. Unless this is done the observation of the court must be wholly rejected as in plain contradiction of settled law, and moreover as not reasonable at all upon its face. In terms it takes no notice of those variations of power which depend on variations of circumstances and imputes an authority in the agent in all cases to do whatever the owners could do themselves if actually present and consenting. Certainly, the law is not so. The result adjudicated was, that *on the facts* the co-owner was liable to the surety on the bail bond for the money the latter had been compelled to pay.

But what were the facts? There were two co-owners, and one was managing owner or ship's husband. The vessel ran against another vessel, whereby she became liable to seizure for the tort. But her owners were likewise liable personally. Process was taken in the admiralty against her, and she was accordingly attached. The co-owner, who was not ship's husband, was abroad and beyond reach. The other was hence left by his co-proprietor to act on his individual judgment and with the like power of a partner.

The case was within the rule stated by Chancellor Kent, that "as the law presumes that the common possessors of a valuable chattel will desire whatever is necessary to the preservation and profitable employment of the common property, part-owners, on the spot, have an implied authority from the absent part-owners, to order for the common concern whatever is necessary for the preservation and proper employment of the ship." 3 Com. 155. Accordingly, the managing part-owner, who was "on the spot" or sufficiently near for the purpose, assumed to act for the "absent part-owner" and caused a bond to be given (and as explained in a later case) in the name of himself and his absent co-owner for the release of the ship, and procured Barker to become surety. The ship was thereupon discharged from arrest, and she proceeded on her voyage, earned freight, and was lost whilst under insurance for the benefit of her owners. The absent co-owner, Highley, received his share of the freight and of the insurance money. The suit in admiralty having terminated in favor of the plaintiffs there, the surety was compelled to pay the damages, interest and costs, and he sued Highley for indemnity. The being placed under such formal contract relation to the transaction as to entitle Barker, the surety, to maintain a claim against him *personally* for repayment, did not alter *Highley's liability in its essential character.* His condition was not changed from that of mere holder of an interest subject to a charge for which

he was not personally liable, to that of one personally liable, and for the entire charge. The collision authorized a personal remedy against him, and the new obligation did no more. He could not object that it was incumbent on his co-owner to have recourse to him before assuming to connect him with the bonding of the vessel. By his absence he precluded all opportunity to do otherwise than act on a presumption of what he wished, and left his co-owner to proceed on that basis. He could not object that no power was given to shift his concern with the seizure from a *non-personal* to a *personal* liability. No such change was made. The liability was personal before as well as after. He could not object that in getting bail his co-owner did not attempt to act for him. The bail was given in his name. He could not object that he had done nothing tending, however remotely, to waive his defense or estop him from asserting his entire want of connection with the transaction. When he received his share of the freight which the liberation of the vessel enabled her to earn, and took his portion of the insurance money which arose as indemnity for her loss, he accepted benefits connected in some degree with the fact which caused her to be restored, and supplied some evidence tending to show his acquiescence in what had been done in that direction. These facts and considerations distinguish the two cases in the clearest manner, and prove as it seems to me, that *Barker v. Highley*, instead of being an authority in favor of the power ascribed to the acting co-owner here, is negatively an authority the other way, if fairly applicable at all to the precise issue to be determined.

In regard to the second question only a few words are called for.

A person who consents to become surety for a party in a legal proceeding must see to it that he acts upon the request of the party himself, or his attorney or agent duly authorized to represent him in that particular.

*Gager v. Babcock* 48 N. Y. 160, 161. And when the question of authority concerns the act of a part-owner of a vessel, and the act is one which may be on his individual account, and not on the account of his co-owner, and the transaction does not furnish explanation on its face, it is incumbent on him who alleges that the act was on behalf of both, to show, as matter of fact, that it was so. Broom's Com. 534, 535.

Now Lester was owner of half of the vessel, not only at the time of the arrest but also for the whole preceding period in which the several claims arose, and had consequently a large and much the largest interest to be protected and fostered. It was quite competent for him to act on his own account when he proceeded to get the vessel liberated. The stipulation or recognizance was made by him as sole principal and by Mitchell as his surety, and the finding is express that the request to the latter to become surety proceeded from Lester and Fuller, and that "Lester signed the said stipulation as principal and as claimant" and that Mitchell "signed and executed as surety." The plain meaning is that Lester was principal and Mitchell his surety.

There is no finding or suggestion that the defendants Chambers were parties to the request made to Mitchell, or that the proceedings were in their behalf, or authorized or desired by them, or that Lester or Fuller assumed to be their agents. Neither is there any finding that Lester assumed to represent or had it in his mind to represent any interest except his own and possibly Fuller's. On the other hand, the stipulation indicates and the finding states that Lester acted "as principal and claimant" and the effect is to raise an inference that he did not act for the defendants Chambers. According to the obvious construction of the finding, Lester, in getting Mitchell to become surety and in doing what was done, did not intend to act and did not assume to act for those parties, and did not intend to get Mitchell and did not assume to get him to be their surety, and

there is no finding of any conduct on the part of the Chambers tending in any manner to indicate their accession to the transaction or submission to liability.

The result is that as to the defendants below, Robert Chambers and Garry Chambers, who alone made defense, and on whose account only the case has come up, the judgment must be reversed, and judgment must be entered in this court on the findings in favor of the said Robert Chambers, as survivor of himself and the said Garry Chambers, and for the costs of both courts.

The other Justices concurred.